1  either an integration clause or a merger clause. In fact, it recites that numerous issues, including the
2  amount of the loan, remain in dispute. It also states that the stipulation does not constitute a release or
3  waiver of any claims of the parties. Secondly, the testimony sought to be admitted, that the payment
4  to MCED was conditioned on a refinance, does not directly contradict the terms of the writing.
5  Extrinsic evidence is admissible to prove facts concerning the execution of the document, but which do
6  not vary the document's terms. Id. at 71. That the payment was conditioned on a refinance would not
7  naturally be made as a separate agreement. Finally, misleading a jury is not a factor since this was a
8  bench trial. It appears that the stipulation is not integrated, and the parol evidence rule does not preclude
9  the admission of extrinsic evidence as to the intent of the parties and the circumstances of the agreement.

10      The July 11, 2002 stipulation to set aside the MCED deed of trust plainly states that the payment
11  to MCED was conditioned on funding of a loan to Dimas. The evidence indicates that at the time the
12  parties negotiated the stipulation, they contemplated that there would be sufficient loan proceeds to pay
13  MCED. However, it became apparent in August 2002 that there would be insufficient proceeds from
14  the Amex refinance to pay MCED $250,000. Dimas initially sought authority from the court to be
15  relieved from its obligations under the stipulation. Before the hearing on Dimas' request, however, the
16  parties entered into a modification of the original stipulation. A written contract may be modified orally
17  if supported by new consideration. Cal. Civ. Code § 1698. The modification provided that MCED
18  would reconvey the deed of trust without receiving any payment from escrow. As consideration, Dimas
19  agreed to pay MCED $250,000 at a later time but no longer conditioned the payment on a refinance.
20  The terms of the modification were confirmed by a letter from Christine Long to Paul Reza dated
21  August 28, 2002. MCED in fact tendered a reconveyance to Dimas on September 3, 2002 that was not
22  accompanied by escrow instructions to record it only upon payment to MCED from escrow.

23      The fundamental goal of contract interpretation is to give effect to the mutual intention of the
24  parties. County of San Diego v. Ace Property & Cas. Ins. Co., 37 Cal.4th 406, 415 (2005). The
25  language of a contract governs its interpretation if the language is clear and explicit and does not involve
26  an ambiguity. In re Gerwer, 253 B.R. 66, 73 (B.A.P. 9th Cir. 2000);Cal. Civ. Code § 1638. The August
27  28, 2002 letter states explicitly and unambiguously that Dimas would pay MCED $250,000 without
28  condition, and this construction is consistent with the testimony of counsel for both parties. Outside of

bankruptcy, the terms of this agreement would be enforceable against Dimas. However, under Bankruptcy Rule 9019, a settlement or compromise agreement between the debtor in possession and another party must be approved by the court, after notice and opportunity for a hearing, to be enforceable. In re Blehm Land & Cattle Co., 859 F.2d 137, 141 (10th Cir. 1988). Because the parties did not provide notice of the terms of their compromise to creditors and did not obtain court approval of the compromise, it is not enforceable against the estate.

### V. Dimas Has Not Met its Burden on the Conspiracy Claim.

To prevail on a claim for civil conspiracy, the plaintiff must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. Choate v. County of Orange, 86 Cal. App. 4th at 333. It is not sufficient that the defendants knew of an intended wrongful act. They must expressly or tacitly agree to achieve it. Unless there is such a meeting of the minds, an independent act by one wrongdoer does not constitute a conspiracy. The plaintiff has a weighty burden. Bare allegations and rank conjecture are insufficient to prove a civil conspiracy. Id.

Dimas has failed to meet its burden of proof to show that there was any agreement, explicit or tacit, a mutual understanding, or a meeting of the minds among the defendants to conduct a wrongful foreclosure. MCED's waiver of notice or objection to relief from stay did not contribute to the wrongful foreclosure by IGL. There is no evidence that Hu, on behalf of MCED, or Ho, individually, was aware of the circumstances that rendered the foreclosure procedurally defective. Specifically, there is no evidence that Hu or Ho was aware of the beneficiary's failure to advance the funds to cure the defaults on the senior trust deeds. The evidence indicates that Hu and Ho did not meet with IGL and Lewis until *after* the foreclosure sale was completed. That Hu or Ho may have engaged in discussions concerning MCED's interest in acquiring the property after the foreclosure sale, or even reached the terms of an option agreement, does not change this analysis. MCED did not owe Dimas a fiduciary duty and was entitled to protect its own interests.

29

MEMO. DECISION & ORDER AFTER TRIAL

### VI. *The Remedy for Failure of Contract Formation is Restitution of Benefits Received.*

When contract formation fails based on the lack of mutual consent, the proper remedy is restitution of the value received. Peerless Glass Co. v. Pacific Crockery & Tinware Co., 121 Cal. 641, 647 (1898). The Restatement (First) of Restitution provides:

> § 15. Mistaken Belief of Contract with Payee.
> A person is entitled to recover money which he has paid another pursuant to the terms of a supposed contract with or offer from the other which, because of the payor's mistake of fact as to the existence of consent, of consideration or of a required formality, he erroneously believed to exist, if he does not get the expected exchange.
>
> * * *
>
> § 40. When Restitution for Services is Granted.
> A person who has rendered services to another or services which have inured to the benefit of another ... is entitled to restitution therefor if the services were rendered ...
>
> (b) to obtain the performance of an agreement with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the one performing the services erroneously believing because of a mistake of fact that the agreement was binding upon the other. ...

*Restatement (First) Restitution* §§ 15, 40 (1937). Comment c to § 40 of the Restatement (First) of Restitution says:

> What the parties think to be an agreement may not be one, either because there is ambiguity in the language used and each is justified in his interpretation, or because the parties, justifiably or with equal fault, are mistaken as to the terms agreed upon. Likewise, their agreement may be so indefinite as to promise or performance that it is not enforceable as a contract, so that restitution for what has been performed is required to prevent unjust enrichment. As in other cases where there is lack of mutual consent or consideration, the one rendering the services is entitled to restitution if he does not get the expected exchange. ...

*Restatement (First) Restitution* § 40, com. c. A party may be required to make restitution if that party is unjustly enriched at the expense of another. Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996)(citing *Rest., Restitution* § 1). Unjust enrichment is the general principle that one should not be unjustly enriched at the expense of another, but should be required to make restitution of benefits received where it is just and equitable. In re Wright, 355 B.R. 192, 208 (Bankr. C.D. Cal. 2006)(citing Dinosaur Dev., Inc. v. White, 216 Cal. App. 3d 1310, 1315 (Cal. Ct. App. (1st Dist.) 1989)). The term "benefit" refers to any form of advantage. Ghirardo v. Antonioli, 14 Cal. 4th at 51.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California