The evidence establishes that MCED actually advanced the following amounts to or for Dimas' benefit.

| DATE | PAYOR | PAYEE | AMOUNT | PURPOSE |
|---|---|---|---|---|
| 06/27/2001 | MCED | Dimas, LLC | $67,859.00 | Subdivision bond |
| 07/11/2001 | MCED | Dimas, LLC | 250,000.00 | Working Capital |
| 07/23/2001 | MCED | Ridge View | 14,970.00 | Working Capital |
| 08/13/2001 | MCED | Ridge View | 60,000.00 | Working Capital |
| 08/17/2001 | MCED | Ridge View | 25,000.00 | Working Capital |
| 01/07/2002 | MCED | Robert Liu | 40,000.00 | Cure default of IGL loans |
| 02/07/2002 | MCED | Robert Liu | 10,000.00 | Cure default of IGL loans |
| | | TOTAL | $467,829.00 | |

Dimas concedes that, although some checks were returned for insufficient funds, it actually received the following amounts from MCED, which were set forth in ¶ 22 of the Pre-Trial Order and are restated below.

| DATE | PAYOR | PAYEE | AMOUNT | PURPOSE |
|---|---|---|---|---|
| 06/28/2001 | Ridge View Investment Inc. | Adrienne Rakitin | $2,500.00 | Partial payment Joint Venture Agreement 06/20/01 ¶ 11 |
| 07/02/2001 | John Ho | Adrienne Rakitin | 10,000.00 | Project Costs |
| 07/11/2001 | Ridge View Investment Inc. | Dimas | 10,000.00 | Demolition Fee |
| 07/15/2001 | John Ho | Investment Grade Loans Inc. | 238,684.20 | Cured IGL default April - July 2001 |
| 07/31/2001 | Ridge View Investment Inc. | Dimas | 2,000.00 | Working Capital |
| 08/10/2001 | Ridge View Investment Inc. | Dimas | 2,000.00 | Partial payment Joint Venture Agreement 06/20/01 ¶ 11 |

| | | | | |
|---|---|---|---|---|
| 08/22/2001 | John Ho | Peter Rakitin | 10,000.00 | Reimbursement for payment of mortgage |
| 08/22/2001 | John Ho | Investment Grade Loans Inc. | 38,391.00 | IGL mortgage payment for August 2001 |
| 09/14/2001 | Ridge View Investment Inc. | Dimas | 2,880.00 | Pruning |
| 01/10/2002 | Robert Liu | Investment Grade Loans Inc. | 29,939.00 | Joint Venture Investment |
| 01/10/2002 | Robert Liu | Dimas | 10,000.00 | Joint Venture Investment |
| 02/07/2002 | Robert Liu | Investment Grade | 10,000.00 | Joint Venture Investment |
| | | **TOTAL** | **$366,394.20** | |

Although the issue was raised in the Pre-Trial Order, there was no evidence offered that Ho altered any of the checks.

The difference between the amount that MCED advanced and the amount that Dimas received constitutes advances made to Ridge View or to Ho that were not thereafter forwarded to Dimas. The parties dispute whether those advances totaling $101,434.80 should be attributable to Dimas' account. That determination turns on whether Ho may be characterized as Dimas' agent for purposes of receiving those advances. Dimas employed Ho's development company, Ridge View, to serve as the sole project and construction manager for the development of the property. The terms of that relationship are delineated in the Standard Form of Agreement Between Owner and Construction Manager dated April 21, 2001. Under that agreement, Ridge View was generally required to furnish business administration and management services in connection with the construction of improvements on the property. Those services included oversight and evaluation of project costs and budget.

The role of Ridge View and Ho are acknowledged in both the June 20, 2001 and the June 22, 2001 joint venture agreements, which provide:

> The Joint Venture will employ John Ho (Ridge View Investment Ltd., LLC) as its sole project manager to conduct daily business affair (sic) of The Joint Venture. The compensation for the project management fee will be at 5% of total project costs indicated at project cost and profit analysis statement. . . . The duty and responsibility

> of the project manager will be stated in the contract agreement between The Joint Venture and John Ho (Ridge View Investment, Ltd., LLC). The project management fee will be paid on the progress payment basis for the duration of the entire project. . . .

The April 10 letter that Rakitin executed also confirmed that Ho was the sole project and construction manager. The evidence indicates that Ho had actual authority to receive the advances from MCED as an agent for Dimas. Even absent actual authority, Dimas by its conduct, conferred ostensible authority to Ho to act as Dimas' agent in accepting the advances from MCED. Rakitin acquiesced to MCED making its advances to Ho so long as funds were forthcoming to Dimas. The court concludes that Ho and Ridge View were Dimas' agents for purposes of accepting advances from MCED for the development project and that Dimas should bear the responsibility for the funds advanced through Ho and Ridge View.

The testimony reflects that Dimas received a benefit and advantage from the advances made by MCED. The funds were directed to project related expenses and enabled Dimas to complete much of the work necessary to the preconstruction phase of the development project. Dimas demolished the structure in the property and made progress toward obtaining permits. Rakitin testified that the only task that remained was the recordation of the final map. The funds advanced by MCED also enabled Dimas to pay the IGL loans and property taxes and obtain several extensions of the foreclosure sale. Funds that Ho retained on account of his fees, to the extent allowable under the construction contract with Dimas, appear to have been a reasonable allocation in view of the scope of Ho's authority as an agent for Dimas. It would be unjust for Dimas to have benefitted from the use of the funds at MCED's expense. Under the court's equitable powers, restitution by Dimas in the total amount advanced by MCED appears to be in order.

## CONCLUSION

Based on the foregoing, the court concludes that Dimas is not entitled to judgment against MCED and Ho on its complaint. MCED is entitled to restitution in the amount of $467,829 based on its claim.

Good cause appearing, IT IS SO ORDERED.

\* \* \* END OF ORDER \* \* \*