**E-Filed 1/25/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE DIMAS, LLC,<br><br>            Debtor, | Case Number C 07-4084<br><br>ORDER[1] DENYING MOTION FOR STAY<br><br>[re: docket nos. 3, 5, 9] |

On July 27, 2007, the United States Bankruptcy Court for the Northern District of California entered judgment in favor of Creditor, Appellee Milpitas Countryside Estates Development, Inc., ("MCED") against Debtor, Appellant, Dimas, LLC ("Dimas"). On August 8, 2007, Dimas filed an appeal of that decision in this Court, and on August 27, 2007, Dimas filed a motion for stay of the judgment pending appeal. MCED has opposes the motion for stay. The Court heard oral argument on October 12, 2007.

## I. BACKGROUND[2]

In 2001, Dimas and MCED entered into a business agreement for the development of a

---

[1] This disposition is not designated for publication and may not be cited.
[2] The facts discussed below are taken form the transcript of the "Continued Hearing on Objection to Claim re Milpitas Countryside Estates & Development, Inc." held on July 7, 2006 before the Bankruptcy Court.

Case No. C 07-4084
ORDER DENYING MOTION FOR STAY
(JFLC1)

twenty-four acre parcel of real property in Milpitas, California. MCED contends that it advanced funds to Dimas to cure default payments to a company called Investment Grade Loans ("IGL"), and to pay taxes and development costs. In return, Dimas executed a promissory note and conveyed a deed of a trust on the property in the amount of $1,200,000. In early 2002, Dimas discontinued payments to IGL.

Dimas commenced Chapter 11 proceedings in the United States Bankruptcy Court for the Northern District of California on March 13, 2002 to stop foreclosure by IGL, scheduling a claim of MCED in the amount of $450,000. MCED received notice of the proceedings and the July 9, 2002 deadline for filing proofs of claim, but it did not respond. MCED did, however, participate in the Chapter 11 proceedings.

On July 31, Dimas commenced an adversary proceeding against MCED to invalidate MCED's deed of trust. MCED filed a motion to dismiss the action on July 10, 2002, after the deadline for filing proofs of claims in the Chapter 11 case had run. Together with its motion to dismiss, Dimas also filed opposition to Dimas's motion to refinance the secured debt or alternatively, to subordinate MCED's deed of trust. The dispute regarding the motion to refinance was resolved by the following stipulation:

> The parties agree that Milpitas, MCED did not pay the sum of 1.2 million to Dimas. The parties also agree that Milpitas asserts that it loaned to Dimas approximately 450,000. And Dimas asserts that it received directly or indirectly from Milpitas the approximate sum of 250,000. The parties agree that the amount of this loan remains in dispute.
> Dimas agrees to allow Milpitas to submit to the escrow a demand in the amount of 250,000. The demand to be applied towards the claim of MCED.
> The payment of the demand is conditioned upon Dimas obtaining a loan in the amount of not less than 4.3 million.

This stipulation was approved by the Bankruptcy Court on July 12, 2002. On September 3, 2002, MCED reconveyed the deed of trust to Dimas so that it could obtain a loan. In exchange, Dimas agreed to pay MCED $250,000 within sixty days of refinance.

When Dimas was unable to obtain a loan, IGL commenced foreclosure proceedings. While these proceedings were pending, IGL and MCED negotiated a purchase option for MCED

2

Case No. C 07-8084
ORDER DENYING MOTION FOR STAY
(JFLC1)

in return for MCED's agreement not to oppose foreclosure. On September 10, 2002, ILG refused a tender by Dimas to cure default, and the foreclosure sale was completed. Dimas brought an action for wrongful foreclosure against IGL and the foreclosure company on November 18, 2002, naming MCED as a defendant for its acquisition of the purchase option. MCED answered the complaint in that action on January 24, 2003, at which point the disposition of the Chapter 11 proceedings became dependent on the outcome of the adversary proceedings.

In 2005, the Bankruptcy Court granted Dimas partial summary judgment setting aside the foreclosure sale. Dimas and IGL then reached a settlement agreement entitling IGL to $4,000,000 to be paid in installments. The settlement agreement provided that if Dimas failed to pay the first installment within thirty days of the Court's approval of the settlement agreement ILG had the option of purchasing title from Dimas for $1,800,000. Dimas in fact defaulted, and IGL obtained title to the property.

Following a settlement conference in 2005, Dimas began for the first time to file objections to claims in the Chapter 11 proceedings, including MCED's claim. Although Dimas filed a plan and disclosure statement the Bankruptcy Court declined approval until Dimas liquidated the disputed claims so that the Court could fix the amount of distribution to creditors. The Bankruptcy Court also issued an order to show cause in December 2005 as to why Dimas's action MCED should not be dismissed for failure to prosecute. MCED then requested leave to file a proof of claim, and Dimas opposed the motion arguing that it was untimely. On July 7, 2006, the Bankruptcy Court held that it would be equitable to allow MCED to file a late claim. On October 4, 2006, MCED filed a proof of claim in the sum of $534,829 that later was amended to $467,000.

MCED's claim and Dimas's action against MCED were consolidated. On July 23, 2007, the Bankruptcy Court issued its Memorandum Decision and Order After Trial allowing MCED's claim for the amended amount and denying Dimas relief in the adversary proceeding. On August 3, 2007, the Bankruptcy Court heard and denied Dimas' motion for stay of any payment of the claim pending appeal. Dimas appeals to this Court the Bankruptcy Court's denial of a stay.

3

## III. DISCUSSION

Courts recognize "three types of stays, one that issues as a matter of right, another that is discretionary and a third that combines features of the two." *In re Wymer*, 5 B.R. 802, 804 (9th Cir. 1980). In turn, these stays are referred to as a supersedeas stay, a discretionary stay and a modified supersedeas stay. Dimas argues that it is entitled to a modified supersedeas stay, or in the alternative, a discretionary stay.

   1. Discretionary Stay

Pursuant to Federal Rule of Bankruptcy 8005, a bankruptcy court has discretion to grant a stay of judgment, order or decree. When deciding whether to grant such a stay, four factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether the stay will impose substantial harm on the appellee; and (4) whether the stay will harm the public interest. *See In re Wymer*, 5 B.R. at 806. "When a bankruptcy court has rule on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion." *In re Universal Life Church, Inc.*, 191 B.R. 433, 437 (E.D. Cal. 1995).

In this case, the Bankruptcy Court's decision on the merits awarded judgment to MCED based on a finding that, although there was neither an enforceable loan agreement nor an enforceable joint venture agreement, MCED was entitled to restitution for the value provided to Dimas. Dimas bases its appeal on three arguments: (1) MCED should not have been permitted to file a late claim four years after the claims bar date; (2) the Bankruptcy Court erred in finding that there was no binding enforceable joint venture agreement; and (3) the Bankruptcy Court erred in finding that there was not a proper loan agreement. Although this Court does not have before it a transcript of the Bankruptcy Court proceedings with respect to the motion for stay, it concludes on the available record that the Bankruptcy Court did not abuse its discretion in concluding that Dimas is unlikely to succeed on appeal.

The Bankruptcy Court framed the issue of MCED's untimely claim as a question of excusable neglect. Applying the *Pioneer* factors the court found MCED's behavior excusable. *Pioneer* instructs that, in deciding whether neglect is "excusable" a court must:

4

Case No. C 07-8084
ORDER DENYING MOTION FOR STAY
(JFLC1)

> take[] account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Excusable neglect is meant to be an "elastic concept and is not limited strictly to omissions caused by circumstances beyond control of the movant." *Id.* at 293; *see also Pincay*, 389 F.3d at 856 ("In *Pioneer* itself the Court adopted a broader and more flexible test for excusable neglect."); *Marx v. Loral Corp.*, 87 F.3d 1049, 1053-54 (9th Cir. 1996) (replacing the former "strict standard" for measuring excusable neglect with an equitable standard following *Pioneer*). The Bankruptcy Court found that: (1) there was no prejudice to Dimas because, although MCED had not filed a claim previously, it actively had sought to protect its claim through the time of the foreclosure sale, at which point the claim was filed; (2) the delay in filing the claim had no actual effect on any judicial proceedings; and (3) Dimas did not cite any evidence demonstrating bad faith.

The Bankruptcy Court also reviewed two drafts of a joint venture agreement between the parties–one signed by Dimas and one signed by MCED. Finding substantial differences between the two drafts, including major discrepancies with respect to equity contributions, anticipated profit distribution and mortgage payment obligations, the Bankruptcy Court concluded that there had been no meeting of the minds between the parties. The Bankruptcy Court thoroughly examined the facts and circumstances surrounding the transaction and found that it did not bear the indicia of a loan. Specifically, it found that the parties had not contracted for a pure return of money loaned but instead intended to share in the profits of their venture. This Court finds the Bankruptcy Court's reasoning on these matters to be thorough and sound. Accordingly, the Bankruptcy Court's conclusion with respect to the likelihood of Dimas's success on appeal is not unreasonable.

2. Modified Supersedeas

Dimas also argues that it is entitled to a modified supersedeas stay. "Ordinarily a stay of

5

judgment of the bankruptcy court pending appeal may be obtained as of right by offering a supersedeas bond with sufficient surety in an amount sufficient to protect the interests of appellee." Collier on Bankruptcy § 8005.05. Additionally, in limited circumstances where the appellant cannot offer a supersedeas bond, courts have discretion to modify the requirements:

> If the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court . . . . is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.
> . . . If a court chooses to depart from the usual requirement of a full security bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such departure. It is not the burden of the judgment creditor to initiate contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money.

*Wymer*, 5 B.R. at 806-07 *quoting Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979). Dimas's request in this case does not fit within this framework. Without identifying any reasons for departure from ordinary supersedeas procedures, Dimas seeks not modification but complete excuse of the bond requirement.

Dimas contends that the Bankruptcy Court did not consider its request for supersedeas bond. Review of Dimas's motion before the Bankruptcy Court reveals that such a request was never made and that Dimas never offered to pay any amount of bond. Instead, Dimas stated "there are and will be sufficient funds held in the estate's trust account to pay MCED's unsecured creditor's claim plus interest at the legal federal rate pending appeal." Motion of Debtor Dimas, LLC to Stay Payment of Claim Pending Appeal at 2. Similarly, Dimas argues that this Court should grant its request for a stay because "its trust account dated June 30, 2007 show[s] a balance in the sum of $997,032.74, together with a listing of outstanding unsecured creditors and administrative claims and projected balance of $646,066.94 after payment of all possible claims." Debtor's Reply in Support of Motion for Stay Pending Appeal at 4.

6

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Dimas's motion for a stay remedy appeal is DENIED.

DATED: January 25, 2008.

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

| | |
|---|---|
| Christine H. Long | christine.long@berliner.com |
| Javed I. Ellahie | javed@ellahie.net |
| Laura Anne Palazzolo | laura.palazzo@berliner.com |
| Michael E. Sone | mikeestone@yahoo.com |
| Laurence E. Smith | larry@lesmithlaw.com |

Marilyn Morgan
U.S. Bankruptcy Court
280 South First St.
Rm 3035
San Jose, CA 95113

USBC Manager-San Jose
U.S. Bankruptcy Court
280 South First St.
Rm 3035
San Jose, CA 95113

U.S. Trustee/SJ
U.S. Federal Bldg.
280 S. First Street
San Jose, CA 95113-3004

8

Case No. C 07-8084
ORDER DENYING MOTION FOR STAY
(JFLC1)