Document No. 1
Restatement (First) of Restitution, §15

LEXSTAT REST. 1ST OF RESTITUTION SECTION 15

Restatement of the Law, Restitution
Copyright (c) 1937, The American Law Institute

Case Citations

Rules and Principles

Part I - The Right to Restitution (Quasi Contractual and Kindred Equitable Relief)

Chapter 2 - Mistake, Including Fraud

Topic 2 - Mistake of Fact

Title A - Money Paid by Mistake: In General

Restat 1st of Restitution, § 15

§ 15 Mistaken Belief in Existence of Contract with Payee

A person is entitled to recover money which he has paid another pursuant to the terms of a supposed contract with or offer from the other which, because of the payor's mistake of fact as to the existence of consent, of consideration or of a required formality, he erroneously believed to exist, if he does not get the expected exchange.

**COMMENTS & ILLUSTRATIONS:** *Comment*:

   *a.* Although the rule stated in this Section includes only the payment of money, similar principles apply where things other than money are transferred (see § 39). The rule also applies where, in the settlement of accounts, credit is given for money believed to be owed, the transaction being the same as if there had been a double transfer of money. As to the performance of services, see §§ 40-42.

   The rule stated in this Section is limited to situations where the payment is made in fulfillment of a supposed contract or offer which is ineffective or which does not exist. It does not apply to cases where a bargain is ineffective as a contract because of incapacity, or of illegality (see Restatement of Contracts, §§ 598-609). As to transactions which are unenforceable because of the Statute of Frauds, see §§ 178-225 and § 355 of the Restatement of Contracts.

   The rule does not apply where the payor knows the facts at the time of payment, although he entered into the transaction as the result of mistake, whether or not induced by fraud or misrepresentation.

   Where the payor has a contract with another and, because of a mistake of identity or otherwise, makes payment of money due thereunder to a third person, the other contracting party can maintain an action against the payee under the conditions stated in § 126.

   *b. Negligence and other defenses.* The fact that the transferor was carelessly ignorant of facts as to which he was mistaken, does not necessarily bar recovery; this, however, may be considered in determining whether it is equitable to allow recovery (see § 59). As to other defenses, see §§ 60-69. As to the amount of recovery, see §§ 150-159.

   *c. Kinds and causes of mistake.* The rule stated in this Section is applicable only if the mistake is as to the existence of a fact which is essential to the existence of a contract; it applies only if the payor believes in the existence of facts which would constitute a contract or an offer, and only if the payment is made as the performance of a promise or condition or as the acceptance of the offer. The rule is limited to mistaken belief in the existence of a contract with or offer by the payee. As to the effect of a mistaken belief that there is a contract with a third person, see § 14.

   A mistake because of which restitution is permitted may be unilateral, as where the transferor alone believes that the transferee has given his assent to the transaction, or common to both parties, as where both transferor and transferee believe mistakenly that they have transacted business with each other through agents. The rule stated in this Section

applies although there has been no fraud or misrepresentation by the transferee. If the transferee is fraudulent, ordinarily there is a voidable contract and the rules stated in §§ 16 and 28 are applicable; his fraud may be of such a nature, however, that no contract results (see Restatement of Contracts, § 475), in which case the rule stated in this Section applies.

*d. Lack of mutual assent.* There may be no contract because of lack of manifestation of mutual assent (see Restatement of Contracts, §§ 20-74, for the necessity of this element). This may be because there is a justifiable mutual misunderstanding by the parties as to the terms of the bargain (see Restatement of Contracts, § 71) or because the transferor intends a bargain, while the transferee justifiably believes the payment to be a gift. Likewise, there may be no contract because the transferor does not intend to manifest consent to the transaction as it is integrated and this is known to the other, in which case there is fraud (see Restatement of Contracts, § 475). Also, a contract may fail of existence because there is a misunderstanding by one of the parties as to the identity of the other. In such cases, restitution is granted unless the other party assumes or performs the duty which the payor believed to exist.

*Illustrations:*

1. A pays B $ 1000 as an advance payment for the purchase of the ship "Peerless." There are two ships "Peerless," equally well known. A knows only of one, and B of the other which B owns, each being reasonable in his belief. A is entitled to restitution from B (see Restatement of Contracts, § 71, Illustration 1).

2. A, desiring a house to be built, and B, desiring to build it, mutually employ C, an architect, to draw plans for the house and to prepare the contract between them. C gives to each of them a writing which purports to be one of two identical drafts of a contract. In fact, by C's fraud, the writing given to A calls for the payment of $ 25,000, while the writing given to B calls for payment of $ 35,000. Each signs both documents without discovering the inconsistency. A makes an initial payment of $ 10,000. Upon discovery of the facts and before B has done any work, A is entitled to restitution from B unless B is willing to perform the contract for $ 25,000.

3. It is agreed between A and B that in their business dealings, largely conducted by telegrams, there shall be no responsibility on the sender for mistakes in telegraphic communications. A sends a code message to B offering to sell B a specified grade of iron at $ 30 per ton. By mistake in transmission it is received by B as $ 26 per ton. B sends money in supposed acceptance of the offer. B is entitled to restitution unless A consents to the price of $ 26 per ton.

*e. Mistake as to assumption of duty by payee.* The rule stated in this Section is applicable to a situation where one makes a payment to another in the mistaken belief that the other has promised to assume a duty in return for or with reference to the payment. In such cases the payor is entitled to a return of his money upon disclaimer or a refusal of the other to perform, except where the payment has been made to create a trust for the benefit of a third person. (As to the effect of a disclaimer by a trustee in such case, see the Restatement of Trusts, § 35.) If the payee undertakes the duty which the payor believed the payment would create, the right to restitution is terminated.

*Illustrations:*

4. A transfers money to B in the mistaken belief that he is thereby accepting an offer made by B. A is entitled to restitution, unless, before demand for its return, B agrees to perform in accordance with the supposed offer.

5. A, under the mistaken belief that B is a public carrier, makes an advance payment to B for the carriage of goods subsequently to be delivered by A to B. When the goods are offered for transportation, B refuses to receive them. A is entitled to restitution of the money.

6. A transfers money to B under a mistaken belief that B has agreed to act as trustee for A. A is entitled to restitution unless B agrees to act as trustee.

*f. Where agent has no power to bind.* Frequently a person is mistaken as to the existence of a contract with another because he deals with a purported agent who has no power to bind the other. In such case, if what he pays comes to the hands of the purported principal the transferor can recover the sum so paid unless such principal ratifies. If the purported principal with knowledge of the facts receives or retains the money and, although repudiating the transaction, refuses to repay the amount, the transferor is entitled, at his election, to recover back what was thus improperly received or retained or to maintain an action upon the transaction as it was purported to be made (see Restatement of Agency, §§ 98 and 99). A person giving money to a purported agent who has no power to bind his principal thereby, is not entitled to restitution from the principal unless the money comes to the principal's possession or control or is used for his benefit. Delivery to the purported agent is not of itself delivery to the principal and the principal is bound by the retention by

the agent only if the principal ratifies it. An agent not authorized to conduct a transaction, however, may be authorized to deposit money to his principal's account or to transfer possession of it to the principal. As to the situation in such cases where the money is subsequently withdrawn by the agent, see § 142.

*Illustrations:*

7. Without power to bind P thereby, A purports to act for him in the sale of goods to T who pays therefor by a check payable to P, which A deposits to P's account. T is entitled to restitution from P if P does not ratify by delivery of the goods. If P refuses either to ratify or to return the amount to which his account has been increased, T is entitled at his election to recover the amount paid or to an action against P on the agreement as made by A (see Restatement of Agency, § 99).

8. A, the local agent of P, authorized to receive payment of accounts receivable but not to borrow money, borrows from T $ 1000 on P's account and deposits it to P's credit in the bank in which P has an account. Not knowing the source of the money, P withdraws it from the bank. T is entitled to restitution from P.

9. Same facts as in Illustration 8, except that A keeps the money. T is not entitled to restitution from P.

*g. Lack of consideration.* An agreement may fail to become a contract because consideration is insufficient or is lacking, as where the payee is already obligated to the payor or to the State to do what he promises (see Restatement of Contracts, §§ 75-84), or where the subject matter is not in existence and this fact is not known to the parties (see Restatement of Contracts, § 456). This insufficiency or lack of consideration is to be distinguished from the situation where there is a "failure of consideration" as defined in the Restatement of Contracts, § 457, as where the subject matter ceases to exist; in such cases the transaction results in a contract but one in which the obligations may terminate with the destruction of the subject matter to which they relate.

A promise may be so indefinite as to subject matter or so conditioned upon the will of the promisor that no obligation is thereby created; such a promise is not sufficient consideration for a return promise and hence no contract results from the promise. If the promise would be indefinite as applied to some facts and not to others, and it is indefinite because of facts which are unknown to the parties, the rule stated in this Section is applicable; if the parties know the facts but do not realize that the transaction fails as a contract, the payment is made because of a mistake of law and restitution is permitted under the rules stated in § 47.

*Illustrations:*

10. Intending thereby to accept an offer of a reward, A, a public official, performs the specified acts which are also required as part of his official duty. Not knowing that A is a public officer and hence bound to perform, the offeror pays A the reward. A is under a duty to return the amount received.

11. Mistakenly believing that work which he has done was done on A's account, B asks for and obtains payment from A who is similarly mistaken. A is entitled to restitution from B.

12. A pays B $ 1000 for the issuance of an annuity terminable upon the life of C. At the time of the agreement and payment, unknown to both parties, C is dead. A is entitled to restitution from B.

13. A pays B for a horse which at the time, unknown to both parties, is dead. A is entitled to restitution from B.

14. A and B negotiate for the purchase and sale of a portion of a stock of goods owned by B. A memorandum is made out describing various goods which A desires, but with blanks for the amount of each. Some of these blanks are filled. By an oversight other blanks are not filled and no agreement is reached as to them. A price of $ 5000 for the lot is fixed and A pays $ 1000 in advance, both parties erroneously believing that all material details have been agreed upon. A is entitled to restitution.

*h. Formalities.* The lack of a formality may render ineffective what otherwise would be a contract, as where an agent having no sealed authorization makes a sealed agreement, in which case if the seal is essential to the validity of the agreement the principal is not bound. The required formality may, however, be supplied and thus restitution prevented.

*Illustration:*

15. A is orally employed by B to sell and convey Blackacre. For $1000 paid by C, he executes to him a conveyance in B's name, the conveyance being under seal as is required for the transfer of land. A pays the money to B. C is entitled to restitution from B unless B ratifies by a sealed instrument.

**REPORTERS NOTES:** The rule stated in this Section to the effect that there can be restitution where money has been paid to another in the mistaken belief in the existence of a contract with him is well recognized and the following cases are merely illustrations of specific types of situations.

In the following cases restitution was allowed where there was a mistake as to the subject matter of such a nature as to prevent the existence of a contract (Comment *d*): *Harmon v. Lee*, 6 Ia. 171 (1858); *Norton v. Marden*, 15 Me. 45 (1838) (seller and buyer mistaken as to the lot to be sold, each party acting justifiably); *Stong v. Lane*, 66 Minn. 94, 68 N. W. 765 (1896) (same); *Norton v. Bohart*, 105 Mo. 615, 16 S. W. 598 (1891); *De Wolff v. Howe*, 112 App. Div. 104, 98 N. Y. S. 262 (1906) (same); *Werre v. N. W. Thresher Co.*, 27 S. D. 486, 131 N. W. 721 (1911); *McKinnon v. Vollmar*, 75 Wis. 82, 43 N. W. 800, 6 L.R.A. 121, 17 Am. St. Rep. 178 (1889) (same); *Ramsden v. Chessum*, 30 T. L. R. 68 (1913). In *Blake v. Mosher*, 11 Cal. App. (2d) 532, 54 P. (2d) 492 (1936), restitution was granted where the agreement was ambiguous.

In the following cases there was a justifiable misunderstanding by each person as to the manifestation of the other resulting in a misapprehension as to the terms of the agreement (Comment *d*): *Peerless Glass Co. v. Pac. Crockery Co.*, 121 Cal. 641, 54 Pac. 101 (1898); *Vickery v. Ritchie*, 202 Mass. 247, 88 N. E. 835, 26 L.R.A.(N.S.) 810 (1909); *Butler v. Moses*, 43 Ohio St. 166, 1 N. E. 316 (1885).

In the following cases money was paid in a mistaken belief as to the authority of a purported agent, as the result of which the purported principal either received the money or the money was used for his benefit (Comment *f*). In cases of this type it is necessary to find not only that the money was paid but that the money resulted in benefit to the principal. Many of the following cases are those in which the money was used in the discharge of claims against the principal: *First Nat'l Bk. v. Oberne*, 121 Ill. 25, 7 N. E. 85 (1886); *Bicknell, Adm'x v. Widner School Tp.*, 73 Ind. 501 (1881); *First Nat'l Bk. v. Union School Tp.*, 75 Ind. 361 (1881); *White River Tp. v. Dorrell*, 26 Ind. App. 538, 59 N. E. 867 (1901); *Leonard v. Burlington Mut. Loan Assn.*, 55 Iowa 594, 8 N. W. 463 (1881); *F. Riera Hermanos v. Duvigneaud*, 10 La. Ann. 114 (1855); *Billings v. Inhabitants of Monmouth*, 72 Me. 174 (1881); *Rackemann v. Riverbank Imp. Co.*, 167 Mass. 1, 44 N. E. 990, 57 Am. St. Rep. 427 (1896); *Nelson v. Rohweder*, 147 Minn. 325, 180 N. W. 223 (1920); *First Nat'l Bank v. Badger Lumber Co.*, 60 Mo. App. 255 (1895); *Evans v. Garlock*, 37 Hun 588 (N. Y. 1885); *First Baptist Church v. Caughey*, 85 Pa. 271 (1877); *Whitwell v. Warner*, 20 Vt. 425 (1848); *Lumber Co. v. Construction Co.*, 63 W. Va. 477, 60 S. E. 409 (1908); *Reid v. Rigby & Co.* [1894] 2 Q. B. 40; *Jones v. Waring & Gillow* [1926] A. C. 670.

In the following cases restitution was allowed where services were rendered to the knowledge of the purported principal, the authority of the agent being inadequate to support the terms of the agreement: *Hawkins v. Lange*, 22 Minn. 557 (1876); *Henrietta Nat'l Bank v. Barrett*, 25 S. W. 456 (Tex. Civ. App. 1894); *Underhill v. Rutland R. R. Co.*, 90 Vt. 462, 98 Atl. 1017 (1917).

In the following cases restitution was allowed because of the non-existence of the subject matter: *Franklin v. Long*, 7 Gill & J. 407 (Md. 1836) (a slave was sold at the moment of his death); *Young v. Adams*, 6 Mass. 181 (1810) (counterfeit bill); *McGoren v. Avery*, 37 Mich. 120 (1877

The rule stated in this Section to the effect that there can be restitution where money has been paid to another in the mistaken belief in the existence of a contract with him is well recognized and the following cases are merely illustrations of specific types of situations.

In the following cases restitution was allowed where there was a mistake as to the subject matter of such a nature as to prevent the existence of a contract (Comment *d*): *Harmon v. Lee*, 6 Ia. 171 (1858); *Norton v. Marden*, 15 Me. 45 (1838) (seller and buyer mistaken as to the lot to be sold, each party acting justifiably); *Stong v. Lane*, 66 Minn. 94, 68 N. W. 765 (1896) (same); *Norton v. Bohart*, 105 Mo. 615, 16 S. W. 598 (1891); *De Wolff v. Howe*, 112 App. Div. 104, 98 N. Y. S. 262 (1906) (same); *Werre v. N. W. Thresher Co.*, 27 S. D. 486, 131 N. W. 721 (1911); *McKinnon v. Vollmar*, 75 Wis. 82, 43 N. W. 800, 6 L.R.A. 121, 17 Am. St. Rep. 178 (1889) (same); *Ramsden v. Chessum*, 30 T. L. R. 68 (1913). In *Blake v. Mosher*, 11 Cal. App. (2d) 532, 54 P. (2d) 492 (1936), restitution was granted where the agreement was ambiguous.

In the following cases there was a justifiable misunderstanding by each person as to the manifestation of the other resulting in a misapprehension as to the terms of the agreement (Comment *d*): *Peerless Glass Co. v. Pac. Crockery Co.*,

*121 Cal. 641, 54 Pac. 101 (1898); Vickery v. Ritchie, 202 Mass. 247, 88 N. E. 835, 26 L.R.A.(N.S.) 810 (1909); Butler v. Moses, 43 Ohio St. 166, 1 N. E. 316 (1885).*

In the following cases money was paid in a mistaken belief as to the authority of a purported agent, as the result of which the purported principal either received the money or the money was used for his benefit (Comment *f*). In cases of this type it is necessary to find not only that the money was paid but that the money resulted in benefit to the principal. Many of the following cases are those in which the money was used in the discharge of claims against the principal: *First Nat'l Bk. v. Oberne, 121 Ill. 25, 7 N. E. 85 (1886); Bicknell, Adm'x v. Widner School Tp., 73 Ind. 501 (1881); First Nat'l Bk. v. Union School Tp., 75 Ind. 361 (1881); White River Tp. v. Dorrell, 26 Ind. App. 538, 59 N. E. 867 (1901); Leonard v. Burlington Mut. Loan Assn., 55 Iowa 594, 8 N. W. 463 (1881); F. Riera Hermanos v. Duvigneaud, 10 La. Ann. 114 (1855); Billings v. Inhabitants of Monmouth, 72 Me. 174 (1881); Rackemann v. Riverbank Imp. Co., 167 Mass. 1, 44 N. E. 990, 57 Am. St. Rep. 427 (1896); Nelson v. Rohweder, 147 Minn. 325, 180 N. W. 223 (1920); First Nat'l Bank v. Badger Lumber Co., 60 Mo. App. 255 (1895); Evans v. Garlock, 37 Hun 588 (N. Y. 1885); First Baptist Church v. Caughey, 85 Pa. 271 (1877); Whitwell v. Warner, 20 Vt. 425 (1848); Lumber Co. v. Construction Co., 63 W. Va. 477, 60 S. E. 409 (1908); Reid v. Rigby & Co. [1894] 2 Q. B. 40;* Jones v. Waring & Gillow [1926] A. C. 670.

In the following cases restitution was allowed where services were rendered to the knowledge of the purported principal, the authority of the agent being inadequate to support the terms of the agreement: *Hawkins v. Lange, 22 Minn. 557 (1876); Henrietta Nat'l Bank v. Barrett, 25 S. W. 456 (Tex. Civ. App. 1894); Underhill v. Rutland R. R. Co., 90 Vt. 462, 98 Atl. 1017 (1917).*

In the following cases restitution was allowed because of the non-existence of the subject matter: *Franklin v. Long, 7 Gill & J. 407 (Md. 1836)* (a slave was sold at the moment of his death); *Young v. Adams, 6 Mass. 181 (1810)* (counterfeit bill); *McGoren v. Avery, 37 Mich. 120 (1877)* (same); *Gibson v. Pelkie, 37 Mich. 380 (1877)* (purchase of a non-existent judgment); *Bates v. Smith, 83 Mich. 347, 47 N. W. 249 (1890)* (same); *Wood v. Sheldon, 42 N. J. L. 421 (1880)* (void dividend certificate); *Steinback v. Rhinelander, 3 Johns. 269 (N. Y. 1803)* (lack of insurable interest); *Young v. Cole, 3 Bing. 724 (N. C. 1837)* (sale of bonds void for want of a stamp); *Paul v. Kenosha, 22 Wis. 266 (1867)* (void bond); *Martin v. Sitwell, 1 Show *156 (1692)* (lack of insurable interest); *Jones v. Ryde, 5 Taunt. 488 (1814)* (sale of void navy bill); *Strickland v. Turner, 7 Exch. 208 (1852)* (purchaser of annuity entitled to restitution where annuitant was already dead); *Gompertz v. Bartlett, 2 El. & Bl. 849 (1853)* (same); *Couturier v. Hastie, 5 H. L. C. 673 (1856)* (grain which had been sold was destroyed).) (same); *Gibson v. Pelkie, 37 Mich. 380 (1877)* (purchase of a non-existent judgment); *Bates v. Smith, 83 Mich. 347, 47 N. W. 249 (1890)* (same); *Wood v. Sheldon, 42 N. J. L. 421 (1880)* (void dividend certificate); *Steinback v. Rhinelander, 3 Johns. 269 (N. Y. 1803)* (lack of insurable interest); *Young v. Cole, 3 Bing. 724 (N. C. 1837)* (sale of bonds void for want of a stamp); *Paul v. Kenosha, 22 Wis. 266 (1867)* (void bond); *Martin v. Sitwell, 1 Show *156 (1692)* (lack of insurable interest); *Jones v. Ryde, 5 Taunt. 488 (1814)* (sale of void navy bill); *Strickland v. Turner, 7 Exch. 208 (1852)* (purchaser of annuity entitled to restitution where annuitant was already dead); *Gompertz v. Bartlett, 2 El. & Bl. 849 (1853)* (same); *Couturier v. Hastie, 5 H. L. C. 673 (1856)* (grain which had been sold was destroyed).

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Contracts LawDefensesAmbiguity & MistakeGeneral OverviewContracts LawRemediesEquitable ReliefGeneral OverviewContracts LawTypes of ContractsImplied-in-Law Contracts

**Document No. 2**
**Restatement (First) of Restitution, §40**

LEXSTAT REST. 1ST RESTITUTION SECTION 40

Restatement of the Law, Restitution
Copyright (c) 1937, The American Law Institute

Case Citations

Rules and Principles

Part 1 - The Right to Restitution (Quasi Contractual and Kindred Equitable Relief)

Chapter 2 - Mistake, Including Fraud

Topic 2 - Mistake of Fact

Title C - Benefits Other Than Money

Restat 1st of Restitution, § 40

§ 40 When Restitution for Services Is Granted

"A person who has rendered services to another or services which have inured to the benefit of another or who has affixed chattels to the land or chattels of another is entitled to restitution therefor if the services were rendered or the chattels were affixed:

(a) because of the fraud or material misrepresentation of the other, or
(b) to obtain the performance of an agreement with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the one performing the services erroneously believing because of a mistake of fact that the agreement was binding upon the other, or
(c) in the mistaken belief, of which the other knew or had reason to know, that the services would inure to the benefit of the one giving them or of a third person, or that the other promised to pay for them, or
(d) in the discharge of a duty of the other or the release of the other's property from an adverse interest, under the conditions stated in § 43.

**COMMENTS & ILLUSTRATIONS:** *Comment:*

*a.* Restitution for services rendered is not permitted as freely as for money paid or things given, as is indicated by the rules stated in §§ 41 and 42. Frequently it would be unfair to the person benefited by services to require payment since, although benefited, he reasonably may be unwilling to pay the price; he does not have the opportunity of return, which usually exists in the case of things received, nor the definite and certain pecuniary advantage which ensues where money has been paid. On the other hand, if he has obtained the services by fraud or misrepresentation or has manifested a desire to receive the services from the person rendering them, as is true where he has entered into an agreement, it is not unfair to require him to pay for them.

*Comment on Clause (a):*

*b.* The rule stated in this Clause is applicable both where the services are obtained by a consciously false statement and where they are the result of an innocent but material misstatement. The fact that the one rendering the services does not expect to be compensated therefor or otherwise to receive benefit is immaterial. Likewise, the fact that the one for whom the services are rendered does not permanently retain an advantage does not prevent restitution; he receives a benefit in receiving services which he desires. On the other hand, if the services are given because of the fraud or misrepresentation of a purported agent or other third person and the person receiving the service has no notice of their re-

ceipt, he is not thereby liable for the value of benefits received, since he has no duty to pay for that which has been received without his knowledge or desire and which he cannot return. Where domestic services are rendered to a supposed spouse because of an innocent misrepresentation of marital status, the one rendering the services has the burden of proving that the services are of greater value than the benefits received.

*Illustrations:*

1. Purporting to be an experienced lawyer, A employs B in his office at a nominal compensation, promising to instruct B in the law. In fact A is not a lawyer. B performs for three months when he discovers the facts. He is entitled to reasonable compensation for his services.

2. Representing that he is the employment agent of A, but in fact without power to bind A, B employs C to remodel A's house in A's absence. A has never requested such work to be done. C is not entitled to restitution from A for the value of work upon or materials incorporated into A's house.

3. Mistakenly believing that he is properly divorced, A represents to B that he is single and goes through a ceremony of marriage with B. A becomes sick and B assumes charge of family affairs, rendering personal service to A and supporting him by her earnings. B is entitled to restitution.

4. Same facts as in Illustration 3, except that A and B are both supported by A's income. B is entitled to the reasonable value of her services, upon proof that they are of greater value than the value of her support.

*Comment on Clause (b):*

c. What the parties think to be an agreement may not be one, either because there is ambiguity in the language used and each is justified in his interpretation, or because the parties, justifiably or with equal fault, are mistaken as to the terms agreed upon. Likewise, their agreement may be so indefinite as to promise or performance that it is not enforceable as a contract, so that restitution for what has been performed is required to prevent unjust enrichment. As in other cases where there is lack of mutual consent or consideration, the one rendering the services is entitled to restitution if he does not get the expected exchange (see § 15). Similarly where a contract is voidable because of a basic mistake as where performance is or becomes impossible, there can be restitution (see § 16). If because of a basic error more service is rendered than was contemplated by the parties, restitution will be granted for the excess amount (see § 20).

The rule stated in this Clause is not as broad as that stated in § 15 with reference to the payment of money, since under the rule stated in § 15 a person who pays money to another is entitled to restitution if the payment is made in the belief that there is a contract with the other, although the other does not know of the receipt of the money. On the other hand, a person who performs services which benefit another without the other's knowledge is ordinarily not entitled to restitution, as is stated in §§ 41 and 42.

*Illustrations:*

5. A, who is required to have his premises guarded day and night, employs B so to do, agreeing to pay him $ 3.00 "a day." In view of the negotiations which were partly conducted through a mutual friend, A reasonably believes that $ 3.00 a day means $ 3.00 for 24 hours, while B reasonably believes that it means $ 3.00 for each 12-hour period. B works for a month before the misunderstanding is discovered. B is entitled to the reasonable market value of his services up to $ 6.00 for 24 hours.

6. A employs B, an artist, to restore several paintings, on the basic assumption made by A and B that they are "old masters," for the price of $ 500. After B has worked upon the paintings for a week, he discovers that they are copies and are comparatively valueless. A tells him not to continue. B is entitled to the reasonable value of his services for the week.

*Comment on Clause (c):*

d. Although the recipient of services is ordinarily not liable for their value, even to the extent that he has benefited thereby if he does not know of their receipt, he cannot retain a benefit which knowingly he has permitted another to confer upon him by mistake. A landowner who has knowledge that another, in the mistaken belief of ownership, is making improvements upon the land is liable to the other for the value of improvements made after the landowner has had a reasonable opportunity to notify the other of his mistake and fails to do so. The same result follows where a person accepts services from another, having reason to know that the other is under a belief that the recipient or a third person has promised compensation or is otherwise under a duty to pay for them. In both cases the recipient is liable for the

reasonable value of the services irrespective of their value to him. Where he knows that the other is under a mistake as to the terms of payment, his conduct in permitting the continuance of the services subjects him to liability for their value; under some conditions, his conduct may amount to an acceptance of an offer by the other and result in a contract for payment of the price as the other believes it to be.

*Illustrations:*

7. Mistakenly believing that he is the owner of Blackacre, A digs a drainage ditch thereon. The owner, B, sees A doing this, realizes A's error, but does nothing. A is entitled to the reasonable value of the services.

8. A goes to an employment agency which, without power to bind B, employs A on account of B as a butler at $20 per week. A goes to B's house where he serves for two weeks. Carelessly believing that A had been employed by B's wife on his account just before leaving for the country, B makes no inquiries as to the facts. It may be found that A is entitled to receive $40 from B.

9. Same facts as in Illustration 8, except that there was no specification as to pay. It may be found that A is entitled to the reasonable value of his services.

*Comment on Clause (d):*

e. A person who performs services for another without the knowledge of the other ordinarily is not entitled to restitution, because of the reasons stated in Comment a. If, however, the services result in the performance of the duty by the owner, the reasons for denying restitution do not apply and the rule stated in § 43 is applicable.

*Illustration:*

10. By city ordinance persons owning land adjacent to certain streets are required to build sidewalks of specified width and construction in front of their land. If they do not comply, the city is to build the sidewalks, the expense being made a lien upon the land. By mistake of fact as to the location of his land, A builds a sidewalk in front of B's land. A is entitled to be subrogated to a lien upon the land for the amount expended or the amount he has thereby saved B, whichever is less.

*Comment:*

f. *Amount of recovery.* In accordance with the rule stated in § 155, where the person rendering the services is alone at fault in causing the mistake, as well as where both parties are either faultless or equally at fault, restitution is limited to what the services are reasonably worth in view of the purposes of the recipient. If, however, the recipient of the services is more at fault than the giver, the measure of the restitution may be the reasonable value of the services rendered, irrespective of the value to the recipient (see § 152 and caveat to § 155). For the measure of recovery for various items in an accounting between the parties, see §§ 156-159.

g. *Other grounds for avoidance of agreement.* The rule stated in this Section is not applicable to situations where the services are rendered in the course of a fully effective contract which has been broken by either party; nor to cases where the contract is not fully effective because of subsequent impossibility, the Statute of Frauds, illegality, or the fraud of the one rendering the services. As to such cases, see the Restatement of Contracts.

As to situations where the parties have made a mistake of law, see § 53.

REPORTERS NOTES: *Clause (a):*

That there may be restitution for services rendered another because of his fraud or material misrepresentation is clear. Interesting cases are those where a bid on a construction contract has been induced by misrepresentation as to conditions. In such cases recovery is commonly allowed for the value of the extra work required because of the fraud: Hollerbach v. U.S., 233 U.S. 165, 58 L. ed. 898, 34 S. Ct. 553 (1914); Christie v. U.S., 237 U.S. 234, 59 L. ed. 933, 35 S. Ct. 565 (1915); U.S. v. Spearin, 248 U.S. 132, 62 L. ed. 166, 39 S. Ct. 59 (1918); U.S. v. Atl. Dredging Co., 253 U.S. 1, 64 L. ed. 735, 40 S. Ct. 423 (1920); Pitt. Const. Co. v. City of Alliance, 12 Fed. (2d) 28 (C. C. A. 6th, 1926); Sheridan-Kirk Const. Co. v. U.S., 53 Ct. Cl. 82 (1917); Tenn. C., I. & R. Co. v. Butler, 187 Ala. 51, 65 So. 804 (1914); Klaus v. Fila Const. Co., 198 Ill. App. 445 (1916); Simmons v. Lawrence Duck Co., 133 Mass. 298 (1882); Bush v. Brooks, 70 Mich. 146, 38 N. W. 562 (1888); McGovern v. N. Y., 202 App. Div. 317, 195 N. Y. S. 925 (1922); Atlanta Const. Co. v. N. Y., 103 Misc. 233, 175 N. Y. S. 453 (1918); City of Richmond v. Smith & Co., 119 Va. 198 (1916); Sells v. Miss. River Logging Co., 88 Wis. 581, 60 N. W. 1065 (1894).

Restatement of the Law, Restitution, § 40

Some cases, however, hold that the contractor's remedy is to rescind as soon as the fraud is discovered, and that, if he fails to do so his recovery is restricted to the contract price: *Nounnan v. Sutter County Land Co.*, 81 Cal. 1, 22 Pac. 515, 6 L.R.A. 219 (1889); *Prest v. Inhabitants of Farmington*, 117 Me. 348, 104 Atl. 521, 2 A.L.R. 1390 (1918); *S. & S. R. R. Co. v. Row & Treadway*, 24 Wend. 74 (N. Y. 1840); *B. & O. R. R. v. Jolly*, 71 Ohio St. 92, 72 N. E. 888 (1904); *Selway v. Fogg*, 5 M. & W. 83 (1839); *Glasgow & S. W. Ry. v. Boyd & Forest*, [1915] A. C. 526.

The decisions are divided as to whether a woman, induced to believe that she is legally married to a man when in fact she is not, can recover for the services rendered in belief that she was his wife. Whether or not the defendant was fraudulent, the older cases refused recovery on an implied contract and indicated that the wife was relegated to a tort action, usually useless because it did not survive the death of the pseudo husband as the contract action did: *Payne's Appeal*, 65 Conn. 397, 32 Atl. 948, 33 L.R.A. 418, 48 Am. St. Rep. 215 (1895); *Cooper v. Cooper*, 147 Mass. 370, 17 N. E. 892, 9 Am. St. Rep. 721 (1888); *Cropsey v. Sweeney*, 27 Barb. 310 (N. Y. 1858); *Swires v. Parsons*, 5 W. & S. 357 (Pa. 1843); *Cf. Brown v. Tuttle*, 80 Me. 162, 13 Atl. 583 (1888) (probably concubinage). The later cases, however, tend to allow relief in this situation, in accord with the rule stated in this Clause: *Mixer v. Mixer*, 2 Cal. App. 227, 83 Pac. 273 (1905); *Fox v. Dawson's Curator*, 8 Mart. 94 (La. 1820); *Succession of Llula*, 44 La. Ann. 61, 10 So. 406 (1892); *Higgins v. Breen*, 9 Mo. 493 (1845); *Sanders v. Ragan*, 172 N. C. 612, 90 S. E. 777, L.R.A.1917B, 681 (1916); *Wolf v. Fox*, 178 Wis. 369, 190 N. W. 90, 31 A.L.R. 420 (1922). Money given to the husband in reliance on the false representations can be recovered: *Robbins v. Potter*, 11 Allen 588 (Mass. 1866); *Haffer v. Wallis*, 1 Salk. 28 (1795).

A similar division of authorities is revealed where recovery was sought for services rendered under an erroneous belief that the one rendering the services was a slave or otherwise under legal compulsion. Recovery was allowed in: *Kinney v. Cook*, 4 Ill. 232 (1841); *Jarrot v. Jarrot*, 7 Ill. 1 (1845); *Boardman v. Ward*, 40 Minn. 399, 42 N. W. 2

Clause (a):

That there may be restitution for services rendered another because of his fraud or material misrepresentation is clear. Interesting cases are those where a bid on a construction contract has been induced by misrepresentation as to conditions. In such cases recovery is commonly allowed for the value of the extra work required because of the fraud: *Hollerbach v. U.S.*, 233 U.S. 165, 58 L. ed. 898, 34 S. Ct. 553 (1914); *Christie v. U.S.*, 237 U.S. 234, 59 L. ed. 933, 35 S. Ct. 565 (1915); *U.S. v. Spearin*, 248 U.S. 132, 62 L. ed. 166, 39 S. Ct. 59 (1918); *U.S. v. Atl. Dredging Co.*, 253 U.S. 1, 64 L. ed. 735, 40 S. Ct. 423 (1920); *Pitt Const. Co. v. City of Alliance*, 12 Fed. (2d) 28 (C. C. A. 6th, 1926); *Sheridan-Kirk Const. Co. v. U.S.*, 53 Ct. Cl. 82 (1917); *Tenn. C., I. & R. Co. v. Butler*, 187 Ala. 51, 65 So. 804 (1914); *Klaus v. Flick Const. Co.*, 198 Ill. App. 445 (1916); *Simmons v. Lawrence Duck Co.*, 133 Mass. 298 (1882); *Bush v. Brooks*, 70 Mich. 446, 38 N. W. 562 (1888); *McGovern v. N. Y.*, 202 App. Div. 317, 195 N. Y. S. 925 (1922); *Atlanta Const. Co. v. N. Y.*, 103 Misc. 233, 175 N. Y. S. 453 (1918); *City of Richmond v. Smith & Co.*, 119 Va. 198 (1916); *Sells v. Miss. River Logging Co.*, 88 Wis. 581, 60 N. W. 1065 (1894).

Some cases, however, hold that the contractor's remedy is to rescind as soon as the fraud is discovered, and that, if he fails to do so his recovery is restricted to the contract price: *Nounnan v. Sutter County Land Co.*, 81 Cal. 1, 22 Pac. 515, 6 L.R.A. 219 (1889); *Prest v. Inhabitants of Farmington*, 117 Me. 348, 104 Atl. 521, 2 A.L.R. 1390 (1918); *S. & S. R. R. Co. v. Row & Treadway*, 24 Wend. 74 (N. Y. 1840); *B. & O. R. R. v. Jolly*, 71 Ohio St. 92, 72 N. E. 888 (1904); *Selway v. Fogg*, 5 M. & W. 83 (1839); *Glasgow & S. W. Ry. v. Boyd & Forest*, [1915] A. C. 526.

The decisions are divided as to whether a woman, induced to believe that she is legally married to a man when in fact she is not, can recover for the services rendered in belief that she was his wife. Whether or not the defendant was fraudulent, the older cases refused recovery on an implied contract and indicated that the wife was relegated to a tort action, usually useless because it did not survive the death of the pseudo husband as the contract action did: *Payne's Appeal*, 65 Conn. 397, 32 Atl. 948, 33 L.R.A. 418, 48 Am. St. Rep. 215 (1895); *Cooper v. Cooper*, 147 Mass. 370, 17 N. E. 892, 9 Am. St. Rep. 721 (1888); *Cropsey v. Sweeney*, 27 Barb. 310 (N. Y. 1858); *Swires v. Parsons*, 5 W. & S. 357 (Pa. 1843); *Cf. Brown v. Tuttle*, 80 Me. 162, 13 Atl. 583 (1888) (probably concubinage). The later cases, however, tend to allow relief in this situation, in accord with the rule stated in this Clause: *Mixer v. Mixer*, 2 Cal. App. 227, 83 Pac. 273 (1905); *Fox v. Dawson's Curator*, 8 Mart. 94 (La. 1820); *Succession of Llula*, 44 La. Ann. 61, 10 So. 406 (1892); *Higgins v. Breen*, 9 Mo. 493 (1845); *Sanders v. Ragan*, 172 N. C. 612, 90 S. E. 777, L.R.A.1917B, 681 (1916); *Wolf v. Fox*, 78 Wis. 369, 190 N. W. 90, 31 A.L.R. 420 (1922). Money given to the husband in reliance on the false representations can be recovered: *Robbins v. Potter*, 11 Allen 588 (Mass. 1866); *Haffer v. Wallis*, 1 Salk. 28 (1795).

A similar division of authorities is revealed where recovery was sought for services rendered under an erroneous belief that the one rendering the services was a slave or otherwise under legal compulsion. Recovery was allowed in: *Kinney v. Cook*, 4 Ill. 232 (1841); *Jarrot v. Jarrot*, 7 Ill. 1 (1845); *Boardman v. Ward*, 40 Minn. 399, 42 N. W. 202, 12

Am. St. Rep. 749 (1899) (supposed ward); *Hickam v. Hickam*, 46 Mo. App. 496 (1891); *Negro Peter v. Steel*, 3 Yeates 250 (Pa. 1801). Recovery was denied in: *Livingston v. Ackeston*, 5 Cow. 531 (N. Y. 1826); *Negro Franklin v. Waters*, 8 Gill 322 (Md. 1849); *Graham v. Stanton*, 177 Mass. 321, 58 N. E. 1023 (1901) (supposed ward). *Cf. Burrows v. Ward*, 15 R. I. 346, 5 Atl. 500 (1886) (convict working after sentence legally expired -- defendant not fraudulent).

Clause (b):

The authorities in accord with this Clause may be divided roughly into three classes: those in which there was a justifiable misunderstanding or an agreement too indefinite to enforce; those in which there was a mutual mistake of a basic fact; and those in which the agreement was unenforceable because of the Statute of Frauds.

Cases where there was no contract because of ambiguity or similar cause. Restitution was granted in: *Neal v. Allen*, 286 Fed. 903 (C. C. A. 4th 1923); *Rowland v. N. Y., N. H. & Hartford R. R. Co.*, 61 Conn. 103, 23 Atl. 755, 29 Am. St. Rep. 175 (1891); *Hall v. Luckman*, 133 Iowa 518, 110 N. W. 916 (1907); *Wyman v. Passmore*, 146 Iowa 486, 125 N. W. 213, 27 L.R.A.(N.S.) 683 (1910); *Turner v. Webster*, 24 Kan. 38 (1880); *Cobb v. Stevens*, 14 Me. 472 (1837); *W. U. & A. R. R. Co. v. Moss*, 127 Md. 12, 96 Atl. 273 (1915); *Vickery v. Ritchie*, 202 Mass. 247, 88 N. E. 835, 26 L.R.A.(N.S.) 810 (1909); *Orcutt v. White*, 220 Mich. 590, 190 N. W. 660 (1922); *Murphy v. Mitchell*, 254 Mass. 18, 149 N. E. 93 (1925); *Russell v. Clough*, 71 N. H. 177, 51 Atl. 632, 93 Am. St. Rep. 507 (1901); *Bluemner v. Garvin*, 120 App. Div. 29, 104 N. Y. S. 1009 (1907); *Tucker v. Preston*, 60 Vt. 473, 11 Atl. 726 (1887); *Cole v. Clark*, 3 Pin. 303 (Wis. 1852); *Beers v. Kuehn*, 84 Wis. 33, 54 N. W. 109 (1893); *Bach v. Pond*, 126 Wis. 382, 105 N. W. 909 (1905); *cf. Lone Star Gas Co. v. Tex. Gr. & El. Co.*, 168 S. W. 1001 (Tex. 1914).

Cases where there has been a basic mistake, in some of which there were also misrepresentations by the recipient. Restitution was allowed in: *Long v. Athol*, 196 Mass. 497, 82 N. E. 665, 17 L.R.A.(N.S.) 96 (1907); *Horgan v. Mayor*, 160 N. Y. 516, 55 N. E. 204 (1899); *Faber v. City of N. Y.*, 222 N. Y. 255, 118 N. E. 609 (1918); *Langley v. Rouss*, 85 App. Div. 27, 82 N. Y. S. 1082 (1903); *Maney v. Oklahoma City*, 150 Okla. 77, 300 P. 642, 76 A.L.R. 258 (1931).

Cases where a contract was unenforceable because of the Statute of Frauds and restitution was allowed to the person performing, some of which cannot be supported on the ground of unjust enrichment. Action by vendee: *Valle's Heirs v. Flemings Heirs*, 29 Mo. 152 (1859); *Blodgett v. Hitt*, 29 Wis. 169 (1871). Action by vendor, although vendee was not benefited: *Kearns v. Andree*, 107 Conn. 181, 139 Atl. 695, 59 A.L.R. 599 (1928). Action by lessor, although lessee has not benefited: *People's Nat. Bk. v. Magruder*, 77 Fla. 235, 81 So. 440 (1919); *Huey v. Frank*, 182 Ill. App. 432 (1913).

Clause (c):

Where the person for whom the work is being done accepts the work with knowledge of all the facts, recovery should be allowed and the cases allow it. Thus, in *Hawkins v. Lange*, 22 Minn. 557 (1876), an unauthorized person, purporting to be an agent of the defendant, entered into a contract whereby the plaintiff was to cut and haul defendant's timber. The defendant learned the facts, saw the work partly done and said nothing until the plaintiff was half through with the job. The plaintiff, then learning the facts, stopped work and sued in quantum meruit. Recovery was allowed. See 12 Am. St. Rep. 749 (1899) (supposed ward); *Hickam v. Hickam*, 46 Mo. App. 496 (1891); *Negro Peter v. Steel*, 3 Yeates 250 (Pa. 1801). Recovery was denied in: *Livingston v. Ackeston*, 5 Cow. 531 (N. Y. 1826); *Negro Franklin v. Waters*, 8 Gill 322 (Md. 1849); *Graham v. Stanton*, 177 Mass. 321, 58 N. E. 1023 (1901) (supposed ward). *Cf. Burrows v. Ward*, 15 R. I. 346, 5 Atl. 500 (1886) (convict working after sentence legally expired -- defendant not fraudulent).

Clause (b):

The authorities in accord with this Clause may be divided roughly into three classes: those in which there was a justifiable misunderstanding or an agreement too indefinite to enforce; those in which there was a mutual mistake of a basic fact; and those in which the agreement was unenforceable because of the Statute of Frauds.

Cases where there was no contract because of ambiguity or similar cause. Restitution was granted in: *Neal v. Allen*, 286 Fed. 903 (C. C. A. 4th 1923); *Rowland v. N. Y., N. H. & Hartford R. R. Co.*, 61 Conn. 103, 23 Atl. 755, 29 Am. St. Rep. 175 (1891); *Hall v. Luckman*, 133 Iowa 518, 110 N. W. 916 (1907); *Wyman v. Passmore*, 146 Iowa 486, 125 N. W. 213, 27 L.R.A.(N.S.) 683 (1910); *Turner v. Webster*, 24 Kan. 38 (1880); *Cobb v. Stevens*, 14 Me. 472 (1837); *W. U. & A. R. R. Co. v. Moss*, 127 Md. 12, 96 Atl. 273 (1915); *Vickery v. Ritchie*, 202 Mass. 247, 88 N. E. 835, 26 L.R.A.(N.S.) 810 (1909); *Orcutt v. White*, 220 Mich. 590, 190 N. W. 660 (1922); *Murphy v. Mitchell*, 254 Mass. 18, 149 N. E. 93 (1925); *Russell v. Clough*, 71 N. H. 177, 51 Atl. 632, 93 Am. St. Rep. 507 (1901); *Bluemner v. Garvin*, 120 App. Div. 29, 104 N. Y. S. 1009 (1907); *Tucker v. Preston*, 60 Vt. 473, 11 Atl. 726 (1887); *Cole v. Clark*, 3 Pin. 303

(Wis. 1852); *Beers v. Kuehn*, 84 Wis. 33, 54 N. W. 109 (1893); *Bach v. Pond*, 126 Wis. 382, 105 N. W. 909 (1905); cf. *Law. Co. v. Tex. Gr. & El. Co.*, 168 S. W. 1001 (Tex. 1914).

Cases where there has been a basic mistake, in some of which there were also misrepresentations by the recipient. Restitution was allowed in: *Long v. Athol*, 196 Mass. 497, 82 N. E. 665, 17 L.R.A.(N.S.) 96 (1907); *Horgan v. Mayor*, 160 N. Y. 516, 55 N. E. 204 (1899); *Faber v. City of N. Y.*, 222 N. Y. 255, 118 N. E. 609 (1918); *Langley v. Rouss*, 85 App. Div. 27, 82 N. Y. S. 1082 (1903); *Money v. Oklahoma City*, 150 Okla. 77, 300 P. 642, 76 A.L.R. 258 (1931).

Cases where a contract was unenforceable because of the Statute of Frauds and restitution was allowed to the person performing, some of which cannot be supported on the ground of unjust enrichment. Action by vendee: *Valle's Heirs v. Flemings Heirs*, 29 Mo. 152 (1859); *Blodgett v. Hitt*, 29 Wis. 169 (1871). Action by vendor, although vendee was not benefited: *Kearns v. Andree*, 107 Conn. 181, 139 Atl. 695, 59 A.L.R. 599 (1928). Action by lessor, although lessee was not benefited: *People's Nat. Bk. v. Magruder*, 77 Fla. 235, 81 So. 440 (1919); *Huey v. Frank*, 182 Ill. App. 431 (1913).

Ch. [illegible]

Where the person for whom the work is being done accepts the work with knowledge of all the facts, recovery should be allowed and the cases allow it. Thus, in *Hawkins v. Lange*, 22 Minn. 557 (1876), an unauthorized person, purporting to be an agent of the defendant, entered into a contract whereby the plaintiff was to cut and haul defendant's timber. The defendant learned the facts, saw the work partly done and said nothing until the plaintiff was half through with the job. The plaintiff, then learning the facts, stopped work and sued in quantum meruit. Recovery was allowed. Substantially identical facts are presented in *Hopkins v. Paradise Heights Fruit Growers Ass'n*, 58 Mont. 404, 193 Pac. 389 (1920) and in *Underhill v. Rutland R. R. Co.*, 90 Vt. 462, 98 Atl. 1017 (1916). So, in *Werre v. N. W. Thresher Co.*, 27 S. D. 486, 131 N. W. 721 (1911), the plaintiff, thinking he had an agency contract with the defendant, sold a thresher to a third person. The defendant's agent helped consummate the sale, knowing of the plaintiff's belief and hence the plaintiff was allowed to recover.

A jury question was found in *Gulf & S. I. R. Co. v. Magee Warehouse Co.*, 109 Miss. 9, 67 So. 648 (1915), as to whether the plaintiff who loaded cotton on the defendant's trains could recover where the defendant knew of the services, but they had been performed gratuitously by the plaintiff's predecessor.

See also *Silver v. M. K. & T. Ry. Co.*, 125 Mo. App. 402, 102 S. W. 621 (1907), where with defendant's knowledge, plaintiff carried mail which the defendant had contracted to carry, the plaintiff erroneously believing that he had been employed by the defendant. See also the cases cited in the Explanatory Note to § 54, involving a mistake of law. Identical facts are presented in *Hopkins v. Paradise Heights Fruit Growers Ass'n*, 58 Mont. 404, 193 Pac. 389 (1920) and *Underhill v. Rutland R. R. Co.*, 90 Vt. 462, 98 Atl. 1017 (1916). So, in *Werre v. N. W. Thresher Co.*, 27 S. D. 486, 131 N. W. 721 (1911), the plaintiff, thinking he had an agency contract with the defendant, sold a thresher to a third person. The defendant's agent helped consummate the sale, knowing of the plaintiff's belief and hence the plaintiff was allowed to recover.

A jury question was found in *Gulf & S. I. R. Co. v. Magee Warehouse Co.*, 109 Miss. 9, 67 So. 648 (1915), as to whether the plaintiff who loaded cotton on the defendant's trains could recover where the defendant knew of the services, but they had been performed gratuitously by the plaintiff's predecessor.

See also *Silver v. M. K. & T. Ry. Co.*, 125 Mo. App. 402, 102 S. W. 621 (1907), where with defendant's knowledge, plaintiff carried mail which the defendant had contracted to carry, the plaintiff erroneously believing that he had been employed by the defendant. See also the cases cited in the Explanatory Note to § 54, involving a mistake of law.

Legal Topics:

For related research and practice materials, see the following legal topics:
Contracts LawDefensesAmbiguity & MistakeGeneral OverviewContracts LawDefensesFraud & MisrepresentationMaterial MisrepresentationContracts LawRemediesEquitable ReliefGeneral Overview

**Document No. 3**
*In Re Dimas, LLC*
**2008 U.S. Dist. LEXIS 8901**

Page 1

LEXSEE

IN RE DIMAS, LLC, Debtor,

Case Number C 07-4084

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

2008 U.S. Dist. LEXIS 8901

January 25, 2008, Decided
January 25, 2008, Filed

**NOTICE:** NOT FOR CITATION

**COUNSEL:** [*1] For Dimas, LLC, Plaintiff: Christine H. Long, LEAD ATTORNEY, Laura Anne Palazzolo, Berliner Cohen, San Jose, CA; Javed I. Ellahie, The Ellahie Law Firm, San Jose, CA; Steven C. Finley, Hennefer, Finley & Wood, LLP, San Francisco, CA.

For Investment Grade Loans, Defendant: Michael E. Stone, LEAD ATTORNEY, Law office of Michael E. Stone, Campbell, CA.

For Milpitas Countryside Estates Development, Inc., Defendant: Lawrence E. Smith, LEAD ATTORNEY, Law Offices of Lawrence E. Smith, San Ramon, CA.

Marilyn Morgan, Miscellaneous, Pro se, San Jose, CA.

USBC Manager-San Jose, Miscellaneous, Pro se, San Jose, CA.

U.S. Trustee/SJ, Trustee, Pro se, San Jose, CA.

**JUDGES:** JEREMY FOGEL, United States District Judge.

**OPINION BY:** JEREMY FOGEL

**OPINION**

ORDER ' DENYING MOTION FOR STAY

1 This disposition is not designated for publication and may not be cited.

[re: docket nos. 3, 5, 9]

On July 27, 2007, the United States Bankruptcy Court for the Northern District of California entered judgment in favor of Creditor, Appellee Milpitas Countryside Estates Development, Inc., ("MCED") against Debtor, Appellant, Dimas, LLC ("Dimas"). On August 8, 2007, Dimas filed an appeal of that decision in this Court, and on August 27, 2007, Dimas filed a motion [*2] for stay of the judgment pending appeal. MCED has opposes the motion for stay. The Court heard oral argument on October 12, 2007.

**I. BACKGROUND**

2 The facts discussed below are taken form the transcript of the "Continued Hearing on Objection to Claim re Milpitas Countryside Estates & Development, Inc." held on July 7, 2006 before the Bankruptcy Court.

In 2001, Dimas and MCED entered into a business agreement for the development of a twenty-four acre parcel of real property in Milpitas, California. MCED contends that it advanced funds to Dimas to cure default payments to a company called Investment Grade Loans ("IGL"), and to pay taxes and development costs. In return, Dimas executed a promissory note and conveyed a deed of a trust on the property in the amount of $1,200,000. In early 2002, Dimas discontinued payments to IGL.

Dimas commenced Chapter 11 proceedings in the United States Bankruptcy Court for the Northern District of California on March 13, 2002 to stop foreclosure by IGL, scheduling a claim of MCED in the amount of $450,000. MCED received notice of the proceedings and the July 9, 2002 deadline for filing proofs of claim, but it did not respond. MCED did, however, participate [*3] in the Chapter 11 proceedings.

On July 31, Dimas commenced an adversary proceeding against MCED to invalidate MCED's deed of

trust. MCED filed a motion to dismiss the action on July 10, 2002, after the deadline for filing proofs of claims in the Chapter 11 case had run. Together with its motion to dismiss, Dimas also filed opposition to Dimas's motion to refinance the secured debt or alternatively, to subordinate MCED's deed of trust. The dispute regarding the motion to refinance was resolved by the following stipulation:

> The parties agree that Milpitas, MCED did not pay the sum of 1.2 million to Dimas. The parties also agree that Milpitas asserts that it loaned to Dimas approximately 450,000. And Dimas asserts that it received directly or indirectly from Milpitas the approximate sum of 250,000. The parties agree that the amount of this loan remains in dispute.
>
> Dimas agrees to allow Milpitas to submit to the escrow a demand in the amount of 250,000. The demand to be applied towards the claim of MCED.
>
> The payment of the demand is conditioned upon Dimas obtaining a loan in the amount of not less than 4.3 million.

This stipulation was approved by the Bankruptcy Court on July 12, 2002. On September [*4] 3, 2002, MCED reconveyed the deed of trust to Dimas so that it could obtain a loan. In exchange, Dimas agreed to pay MCED $250,000 within sixty days of refinance.

When Dimas was unable to obtain a loan, IGL commenced foreclosure proceedings. While these proceedings were pending, IGL and MCED negotiated a purchase option for MCED in return for MCED's agreement not to oppose foreclosure. On September 10, 2002, ILG refused a tender by Dimas to cure default, and the foreclosure sale was completed. Dimas brought an action for wrongful foreclosure against IGL and the foreclosure company on November 18, 2002, naming MCED as a defendant for its acquisition of the purchase option. MCED answered the complaint in that action on January 24, 2003, at which point the disposition of the Chapter 11 proceedings became dependent on the outcome of the adversary proceedings.

In 2005, the Bankruptcy Court granted Dimas partial summary judgment setting aside the foreclosure sale. Dimas and IGL then reached a settlement agreement entitling IGL to $4,000,000 to be paid in installments. The settlement agreement provided that if Dimas failed to pay the first installment within thirty days of the Court's approval [*5] of the settlement agreement ILG had the option of purchasing title from Dimas for $1,800,000. Dimas in fact defaulted, and IGL obtained title to the property.

Following a settlement conference in 2005, Dimas began for the first time to file objections to claims in the Chapter 11 proceedings, including MCED's claim. Although Dimas filed a plan and disclosure statement the Bankruptcy Court declined approval until Dimas liquidated the disputed claims so that the Court could fix the amount of distribution to creditors. The Bankruptcy Court also issued an order to show cause in December 2005 as to why Dimas's action MCED should not be dismissed for failure to prosecute. MCED then requested leave to file a proof of claim, and Dimas opposed the motion arguing that it was untimely. On July 7, 2006, the Bankruptcy Court held that it would be equitable to allow MCED to file a late claim. On October 4, 2006, MCED filed a proof of claim in the sum of $534,829 that later was amended to $467,000.

MCED's claim and Dimas's action against MCED were consolidated. On July 23, 2007, the Bankruptcy Court issued its Memorandum Decision and Order After Trial allowing MCED's claim for the amended amount [*6] and denying Dimas relief in the adversary proceeding. On August 3, 2007, the Bankruptcy Court heard and denied Dimas' motion for stay of any payment of the claim pending appeal. Dimas appeals to this Court the Bankruptcy Court's denial of a stay.

III. DISCUSSION

Courts recognize "three types of stays, one that issues as a matter of right, another that is discretionary and a third that combines features of the two." *In re Wymer*, 5 B.R. 802, 804 (9th Cir. 1980). In turn, these stays are referred to as a supersedeas stay, a discretionary stay and a modified supersedeas stay. Dimas argues that it is entitled to a modified supersedeas stay, or in the alternative, a discretionary stay.

1. Discretionary Stay

Pursuant to *Federal Rule of Bankruptcy 8005*, a bankruptcy court has discretion to grant a stay of judgment, order or decree. When deciding whether to grant such a stay, four factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether the stay will impose substantial harm on the appellee; and (4) whether the stay will harm the public interest. See *In re Wymer*, 5 B.R. at 806. "When a [*7] bankruptcy court has rule on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discre-

Case 5:07-cv-04084-JF    Document 22-3    Filed 04/08/2008    Page 17 of 18

Page 3
2008 U.S. Dist. LEXIS 8901, *

tion." *In re Universal Life Church, Inc.*, 191 B.R. 433, 437 (E.D. Cal. 1995).

In this case, the Bankruptcy Court's decision on the merits awarded judgment to MCED based on a finding that, although there was neither an enforceable loan agreement nor an enforceable joint venture agreement, MCED was entitled to restitution for the value provided to Dimas. Dimas bases its appeal on three arguments: (1) MCED should not have been permitted to file a late claim four years after the claims bar date; (2) the Bankruptcy Court erred in finding that there was no binding enforceable joint venture agreement; and (3) the Bankruptcy Court erred in finding that there was not a proper loan agreement. Although this Court does not have before it a transcript of the Bankruptcy Court proceedings with respect to the motion for stay, it concludes on the available record that the Bankruptcy Court did not abuse its discretion in concluding that Dimas is unlikely to succeed on appeal.

The Bankruptcy Court framed the issue of MCED's untimely claim [*8] as a question of excusable neglect. Applying the *Pioneer* factors the court found MCED's behavior excusable. *Pioneer* instructs that, in deciding whether neglect is "excusable" a court must:

> take[] account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Excusable neglect is meant to be an "elastic concept and is not limited strictly to omissions caused by circumstances beyond control of the movant." *Id.* at 393; *see also Pincay*, 389 F.3d at 856 ("In *Pioneer* itself the Court adopted a broader and more flexible test for excusable neglect."); *Marx v. Loral Corp.*, 87 F.3d 1049, 1053-54 (9th Cir. 1996) (replacing the former "strict standard" for measuring excusable neglect with an equitable standard following *Pioneer*). The Bankruptcy Court found that: (1) there was no prejudice to Dimas because, although MCED had not filed a claim [*9] previously, it actively had sought to protect its claim through the time of the foreclosure sale, at which point the claim was filed; (2) the delay in filing the claim had no actual effect on any judicial proceedings; and (3) Dimas did not cite any evidence demonstrating bad faith.

The Bankruptcy Court also reviewed two drafts of a joint venture agreement between the parties—one signed by Dimas and one signed by MCED. Finding substantial differences between the two drafts, including major discrepancies with respect to equity contributions, anticipated profit distribution and mortgage payment obligations, the Bankruptcy Court concluded that there had been no meeting of the minds between the parties. The Bankruptcy Court thoroughly examined the facts and circumstances surrounding the transaction and found that it did not bear the indicia of a loan. Specifically, it found that the parties had not contracted for a pure return of money loaned but instead intended to share in the profits of their venture. This Court finds the Bankruptcy Court's reasoning on these matters to be thorough and sound. Accordingly, the Bankruptcy Court's conclusion with respect to the likelihood of Dimas's success [*10] on appeal is not unreasonable.

2. Modified Supersedeas

Dimas also argues that it is entitled to a modified supersedeas stay. "Ordinarily a stay of judgment of the bankruptcy court pending appeal may be obtained as of right by offering a supersedeas bond with sufficient surety in an amount sufficient to protect the interests of appellee." *Collier on Bankruptcy* § 8005.05. Additionally, in limited circumstances where the appellant cannot offer a supersedeas bond, courts have discretion to modify the requirements:

> If the judgment debtor's *present* financial condition is such that the posting of a full bond would impose an undue financial burden, the court . . . . is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.
>
> . . . If a court chooses to depart from the usual requirement of a full security bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such departure. It is not the burden of the judgment creditor to initiate [*11] contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money.

*Wymer*, 5 B.R. at 806-07 quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979). Dimas's request in this case does not fit within this framework. Without identifying any reasons for departure from ordinary supersedeas procedures, Dimas seeks not modification but complete excuse of the bond requirement.

Dimas contends that the Bankruptcy Court did not consider its request for supersedeas bond. Review of Dimas's motion before the Bankruptcy Court reveals that such a request was never made and that Dimas never offered to pay any amount of bond. Instead, Dimas stated "there are and will be sufficient funds held in the estate's trust account to pay MCED's unsecured creditor's claim plus interest at the legal federal rate pending appeal." Motion of Debtor Dimas, LLC to Stay Payment of Claim Pending Appeal at 2. Similarly, Dimas argues that this Court should grant its request for a stay because "its trust account dated June 30, 2007 show[s] a balance in the sum of $ 997,032.74, together with a listing [*12] of outstanding unsecured creditors and administrative claims and projected balance of $ 646,066.94 after payment of all possible claims." Debtor's Reply in Support of Motion for Stay Pending Appeal at 4.

IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Dimas's motion for a stay remedy appeal is DENIED.

DATED: January 25, 2008.

/s/ Jeremy Fogel

JEREMY FOGEL

United States District Judge