**Document No. 6**
**Reporter's Transcript, Volume III**
**Testimony of John Ho**

1

1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3      (SAN JOSE DIVISION)

4

5   In re:

6   DIMAS, LLC,                         Case No. 02-51420-MM

7                                       Chapter 11

8                                       San Jose, California
                                        February 22, 2007
9                                       10:08 a.m.
          Debtor.
10   _____/

11   DIMAS, LLC and ADRIENNE RAKITIN,

12        Plaintiffs,

13        v.                            A.P. No. 02-5453

14   INVESTMENT GRADE LOANS;
     MILPITAS COUNTRYSIDE ESTATES
15   DEVELOPMENT and JOHN HO,

16        Defendants.
     _____/

17

18                      **VOLUME III**

19              TRANSCRIPT OF TRIAL PROCEEDINGS
          a) AMENDED COMPLAINT FOR DAMAGES: (1) CONCEALMENT;
20            (2) BREACH OF CONTRACT; (3) ACTION TO REDEEM;
                (4) CONSPIRACY - WRONGFUL FORECLOSURE;
21        (5) CONSTRUCTIVE TRUST; (6) DECLARATORY RELIEF;
          (7) INJUNCTION; (8) RECOVERY OF USURIOUS INTEREST AND
22                 REQUEST FOR DECLARATORY RELIEF
          b) HEARING ON OBJECTION TO CLAIM RE: MILPITAS
23           COUNTRYSIDE ESTATES & DEVELOPMENT, INC.

24
                BEFORE THE HONORABLE MARILYN MORGAN
25                UNITED STATES BANKRUPTCY JUDGE

2

```
 1  APPEARANCES:

 2  For Dimas. LLC:              HENNEFER, FINELY & WOOD, LLP
                                 BY: STEVEN C. FINLEY, ESQ.
 3                               425 California Street, 19th Floor
                                 San Francisco, California 94104
 4

 5
    For Milpitas                 LAW OFFICES OF LAWRENCE E. SMITH
 6  Countryside and              BY: LAWRENCE E. SMITH, ESQ.
    John Ho:                     18 Crow Canyon Court #205
 7                               San Ramon, California 94583

 8

 9
    Court Recorder:              JACKIE JARVIS
10                               UNITED STATES BANKRUPTCY COURT
                                 280 South First Street
11                               San Jose, California 95113

12

13
    Transcription Service:      Jo McCall
14                              Electronic Court
                                Recording/Transcribing
15                              2868 E. Clifton Court
                                Gilbert, Arizona 85297
16                              Telephone: (480-361-3790)

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2  Defense Witnesses:        Direct Cross Redirect Recross

3  Reuter, Alfred

4      By Mr. Smith              6

5

6

7  Plaintiff's Witnesses:

8  Long, Christine

9      By Mr. Finley          13              47
                                              51
10
       By Mr. Smith                  26               49
11                                                    51

12 Ho, John

13     By Mr. Finley          53             126

14     By Mr. Smith                 112

15

16 Smith, Lawrence E.

       By Mr. Finely         146            153
17
       1.   By Mr. Smith                151
18

19
   Plaintiff's Rebuttal Witnesses:
20
   Rakitin, Adrienne
21
       By Mr. Finley         137
22
       By Mr. Smith                 142
23

24

25

4

1                           I N D E X  (CONTINUED)

2                             E X H I B I T S

3

4    Plaintiff'S Exhibits                          Evid.

5    25 through 30                                    164

6    24                                              167

7    15                                              167

8    16                                              167

9    20                          .                   169

10

11   Defense Exhibits:

12   All Exhibits except BA                          172

13

14

15

16

17

18

19

20

21

22

23

24

25

71

1  and he was interested that you already had a deed of trust

2  signed by Dimas for 1.2 million?  Did you tell him that?

3  A    I didn't.

4  Q    You didn't tell him.

5  A    I didn't.

6  Q    And he didn't ask about it either.

7  A    He didn't ask about it.

8  Q    Okay.  Please look at Exhibit K.  This is the lettered

9  exhibits.  This is a joint venture agreement of June 22,

10  2001.  Do you see that one?

11  A    Yes.

12  Q    Okay.  Now, who prepared this document, to your

13  knowledge?

14  A    This document was designed by me and Mrs. Rakitin.

15  Q    Okay.  Now this is sort of like there's an evolution

16  of documents, April, May and June; they're quite similar,

17  correct?

18  A    Correct.

19  Q    Okay.  Now did you have -- by this point in time,

20  we're in 2001 --

21  A    Yes.

22  Q    -- I take it that Mr. Smith is by now your attorney,

23  right?  You said some time in 2000 he became your attorney.

24  A    Yes.

25  Q    Did you have Mr. Smith review this?

72

1   A     No.

2   Q     Did you have any attorney review it?

3   A     No.

4   Q     Did you have anybody else except for you and Mrs.

5   Rakitin review it?

6   A     No.

7   Q     Okay.  Now did you present this to Mr. Hu to sign?

8   A     I gave it to Robert and Robert bring it to Mr. Tony Hu

9   and he executed it.

10  Q     Okay.  And do you remember what period of time elapsed

11  between when you gave it to Robert to give to Mr. Hu and

12  when it came back to you signed by him?  How long did that

13  take about?

14  A     Couple of days, because we are already in default.

15  The interest reserve would be already exhausted in March

16  2001, and the total amount of the mortgage payment already

17  pile up, almost exceed $200,000.  Mrs. Rakitin was in my

18  office almost daily just begging me to find whatever money

19  I can find to rescue the project.  Obviously, you know,

20  Tony, according to Robert, is the only person interested

21  and has the substantial financial well being and would be

22  able to handle the project.  So we discussed it -- I

23  discussed it with Mrs. Rakitin in my office.

24  Q     Okay.  And did you have any discussions directly with

25  Mr. Hu before you got this contract back signed?

76

1    Q    Such as?

2    A    Such as engineering, design, the map, the City fees,

3    and all the costs and to move the house and a bunch of

4    other things.  And, you know, Mrs. Rakitin gave me the, you

5    know, the laundry list.

6    Q    Of things that were needed.

7    A    Right.

8    Q    Okay.  Now would you look at -- oh, by the way, are

9    you saying that that's Mrs. Rakitin's signature here on

10   Exhibit K, the signature that says Adirenne L. Rakitin?

11   A    I cannot recall.  I maybe signed on her behalf one

12   time, that time, but I did ask her to assert her --

13   acknowledge this agreement on a later date, because I need

14   to pick up the $250,000 from Mr. Hu ASAP to cover the

15   mortgage payment.

16   Q    Okay.  So you signed it for her; did you?

17   A    Yeah, uh-huh.

18   Q    Now, paragraph 3 of this agreement --

19   A    Yes.

20   Q    -- you see where it says:

21          "The company will keep existing mortgage from

22          IGL, Inc."

23   A    Yes.

24   Q    Did Mr. Hu ask you anything about that?

25   A    No.

77

1   Q    What IGL Mortgage, Inc. was?

2   A    No.

3   Q    Okay.  Did you draft that clause; do you know?

4   A    You mean paragraph 3?

5   Q    Yeah.

6   A    I did.

7   Q    Okay.  And what is that meant to mean?

8   A    Well that means the funds coming to the company were

9   to pay mortgages?

10  Q    Right.

11  Q    So the company is going to keep the mortgage current,

12  right?

13  A    Correct.

14  Q    Okay.  Now how is it that you had Mr. Hu sign a

15  contract for a company that hadn't yet been incorporated?

16  Did you know that?

17  A    Yes, I did.

18  Q    And was there some -- wasn't that a problem in your

19  mind?

20  A    No, I discussed this with Mrs. Rakitin in April 2001.

21  I told her that we don't have enough money.  In order to

22  get the new investor participating, in order to have an

23  agreement, to keep floating around, you know, the September

24  11th, the April, the May, the June, the best way to do it is

25  to form a corporation, because I also realized that I need

1  somebody else on paper as the president of the company in

2  order to qualify for the loan.  You can't just have the

3  money.  You need somebody physically in the bank to borrow

4  a construction loan to build the houses.  So it ain't going

5  to be Mrs. Rakitin and it's not going to be me.  It had to

6  be somebody who will qualify here in the United States who

7  has the credibility with the lending company.  So the best

8  way to do it is to form a brand-new company, called

9  Milpitas Countryside Development, Inc. because that is the

10  property of the location.  And what I would do is to put a

11  1.2 million dollars.  At that time she told me that's

12  sufficient enough but I said I will need to have security

13  instrument to allow people waiting to participate in this

14  venture with her.

15  Q    But you got that security instrument back in April,

16  right?

17  A    2001, Yes.

18  Q    The company was formed on -- if you look at Exhibit L,

19  the company was formed June 26, 2001.

20  A    Yes.

21  Q    Did you tell Mr. Hu that he needed to form this

22  company with his name?

23  A    Yes.

24  Q    Okay.

25  A    I think I told him, although I didn't tell me

1  Q    Okay.  Have you received anything in writing from Mr.

2  Hu or MCED stating that it objected to the use of its money

3  in this joint venture for payment of the mortgage?

4  A    Could you rephrase the question again?

5  Q    I'll say it again.  Have you seen anything in writing

6  from Mr. Hu or MCED stating that it objected to the use of

7  its funds in this joint venture agreement for payment of

8  the IGL mortgage?

9  A    Not in writing.

10  Q    Okay.  Was there an architect on this project?

11  A    No.

12  Q    Okay.  You retained $120,000 out of the monies that

13  were provided by MCED; is that right?

14  A    I have to check my accountings.

15  Q    Okay.  Could you look at Exhibit 28, please, Mr. Ho.

16  A    Yes.

17  Q    This is an answer to an adversary proceeding in this

18  bankruptcy that Mr. Smith filed on your behalf.  Do you see

19  it?

20  A    Okay.  Yes.

21  Q    Did you review this document before Mr. Smith filed it

22  on your behalf?

23  A    Yeah.  I must have seen it.

24  Q    Okay.  Paragraph 8, Mr. Smith states:

25        "Ho admits that he opened a bank account at the

136

1  A    That's not true.

2  Q    Did you pay it to the City?

3  A    No, because --

4  Q    And if you had paid it to the City, there would have

5  been a recordation of the final map, right?

6  A    No.  No.

7  Q    Okay.  So in any event, there was no recordation of

8  the final map, and the project didn't commence, correct?

9  A    Correct.

10 Q    Okay.  Now you say in 15.2.1, there's pre-construction

11 phase services for one percent of the total project cost,

12 which will be a hundred thousand dollars, right?

13 A    Right.

14 Q    And on page D1157, the pre-construction phase is

15 delineated in great detail.

16 A    M-hm.

17 Q    Right?

18 A    Yes.

19 Q    You didn't do those things; did you?

20 A    No, I did a lot of things.

21 Q    You didn't do the things that are here in the pre-

22 construction phase.  There was no architect; was there?

23 A    No.  The project is a complicated -- first we are

24 involved in improving the site.  The architect isn't even

25 required for this moment.

173

1
2
3
4
5                CERTIFICATE OF TRANSCRIBER
6
7          I certify that the foregoing is a correct
8     transcript from the digital sound recording of the
9     proceedings in the above-entitled matter.
10
11    DATED: September 17, 2007
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Document No. 7**
**Reporter's Transcript, Volume III**
**Testimony of Christine Long**

1

1          UNITED STATES BANKRUPTCY COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              (SAN JOSE DIVISION)

4

5  In re:

6  DIMAS, LLC,                          Case No. 02-51420-MM

7                                       Chapter 11

8                                       San Jose, California
                                        February 22, 2007
9            Debtor.                     10:08 a.m.

10 _____/

11 DIMAS, LLC and ADRIENNE RAKITIN,

12         Plaintiffs,

13     v.                               A.P. No. 02-5453

14 INVESTMENT GRADE LOANS;
   MILPITAS COUNTRYSIDE ESTATES
15 DEVELOPMENT and JOHN HO,

16         Defendants.
   _____/

17

18                     **VOLUME III**

19              TRANSCRIPT OF TRIAL PROCEEDINGS
        a) AMENDED COMPLAINT FOR DAMAGES: (1) CONCEALMENT;
20       (2) BREACH OF CONTRACT; (3) ACTION TO REDEEM;
             (4) CONSPIRACY - WRONGFUL FORECLOSURE;
21       (5) CONSTRUCTIVE TRUST; (6) DECLARATORY RELIEF;
    (7) INJUNCTION; (8) RECOVERY OF USURIOUS INTEREST AND
22              REQUEST FOR DECLARATORY RELIEF
        b) HEARING ON OBJECTION TO CLAIM RE: MILPITAS
23        COUNTRYSIDE ESTATES & DEVELOPMENT, INC.

24
          BEFORE THE HONORABLE MARILYN MORGAN
25           UNITED STATES BANKRUPTCY JUDGE

2

| | | |
|---|---|---|
| 1 | APPEARANCES: | |
| 2 | For Dimas. LLC: | HENNEFER, FINELY & WOOD, LLP |
| 3 | | BY: STEVEN C. FINLEY, ESQ.<br>425 California Street, 19th Floor<br>San Francisco, California 94104 |
| 4 | | |
| 5 | | |
| 6 | For Milpitas<br>Countryside and<br>John Ho: | LAW OFFICES OF LAWRENCE E. SMITH<br>BY: LAWRENCE E. SMITH, ESQ.<br>18 Crow Canyon Court #205 |
| 7 | | San Ramon, California 94583 |
| 8 | | |
| 9 | | |
| 10 | Court Recorder: | JACKIE JARVIS<br>UNITED STATES BANKRUPTCY COURT<br>280 South First Street |
| 11 | | San Jose, California 95113 |
| 12 | | |
| 13 | | |
| 14 | Transcription Service: | Jo McCall<br>Electronic Court |
| 15 | | Recording/Transcribing<br>2868 E. Clifton Court |
| 16 | | Gilbert, Arizona 85297<br>Telephone: (480-361-3790) |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

3

1                          I N D E X

2   Defense Witnesses:        Direct  Cross  Redirect  Recross

3   Reuter, Alfred

4        By Mr. Smith              6

5

6

7   Plaintiff's Witnesses:

8   Long, Christine

9        By Mr. Finley            13              47
                                                 51
10
         By Mr. Smith                    26              49
11                                                       51

12  Ho, John

13       By Mr. Finley            53             126

14       By Mr. Smith                   112

15

16  Smith, Lawrence E.

         By Mr. Finely           146             153
17
         1.   By Mr. Smith                 151
18

19  Plaintiff's Rebuttal Witnesses:

20  Rakitin, Adrienne

21
         By Mr. Finley           137
22
         By Mr. Smith                   142
23

24

25

4

I N D E X (CONTINUED)

E X H I B I T S

Plaintiff's Exhibits                                    Evid.

25 through 30                                            164

24                                                      167

15                                                      167

16                                                      167

20                          .                           169


Defense Exhibits:

All Exhibits except BA                                  172

43

1  A    Not 60 days, there was a claims bar date -- I don't

2  know about the 60 days.  I don't know what you're

3  referencing.

4  Q    Didn't you just testify that Milpitas was supposed to

5  submit a Proof of Claim and hadn't done so, and therefore,

6  as of November 15th, when you filed the fee application, you

7  weren't concerned about any payments to Milpitas?

8  A    Yeah, I didn't say anything about 60 days.

9  Q    Well, I mean isn't it true that the claims bar date

10 had passed around the time of the original stipulation in

11 July?

12 A    I don't know.  I don't have the calendar in front of

13 me.

14         MR. SMITH: Your Honor, if I could have another

15 exhibit marked, please?  It would be Exhibit BD.

16 BY MR. SMITH:

17 Q    Ms. Long, you've reviewed Exhibit BD recently I take

18 it?

19 A    Yes, the settlement discussion we had?  Yes.

20         MR. FINLEY: Your Honor, this apparently is a

21 settlement discussion.

22         THE COURT: I'm sorry, what did you say?

23         MR. FINLEY: Apparently it is a settlement

24 discussion, so there would be an objection on that ground.

25 Settlement discussions are inadmissible.

44

1          THE COURT: I haven't gotten to anything that

2  looked like a settlement discussion, so I don't know if

3  it's being presented for that purpose.   For what purpose is

4  this presented, Mr. Smith?

5          MR. SMITH: To show Ms. Long's understanding in

6  August of 2005 as to the agreement between Milpitas and

7  Dimas?

8          THE COURT: Yeah, I don't hear anything about a

9  settlement discussion.

10          MR. FINLEY: Well, I think Ms. Long just said it's

11  a settlement discussion.  It's three years after the

12  fact -- yeah, about three years after the fact, and

13  apparently Ms. Long just said it was a settlement

14  discussion.

15          THE COURT: Okay.  We're not going to look at it

16  for settlement discussion purposes.  What I read so far was

17  that -- an explanation about how all these things happened.

18          MR. FINLEY: Right.  I'm just registering an

19  objection for the record, that --

20          THE COURT: Okay.  I haven't seen anything in here

21  that looks like a settlement discussion.  Are you

22  presenting it for purposes of a settlement -- is there a

23  settlement discussion in here, Mr. Smith?

24          MR. SMITH: I don't believe so.  I believe that at

25  some point Ms. Long proposed some sort of settlement, but

45

1    that's not anything that has to do with the purpose --

2             THE COURT: With the issue before the Court now.

3    So the objection is overruled.

4    BY MR. SMITH:

5    Q    So turning to the second page of Exhibit BD, Ms. Long,

6    do you see -- you acknowledge receiving this e-mail from me

7    in which I told you I had seen a copy of the stipulation

8    for removal of deed of trust, and that the stipulation

9    settled the action by Dimas' agreement to permit Milpitas

10   to submit a demand --

11            MR. FINLEY: Your Honor, I object to this because

12   Mr. Smith is just reciting his previous statements which

13   are hearsay.

14            THE COURT: I haven't heard him finish the

15   question yet.  When he finishes the question, then we can

16   decide whether or not it's objectionable?

17            MR. FINLEY: He's reading his statements of the

18   documents, which are hearsay that --

19            THE COURT: Do you have a question here, Mr.

20   Smith.

21   BY MR. SMITH:

22   Q    I just asked, you did receive this, right, Ms. Long?

23   A    I received and responded to this document.  In fact,

24   this is from my production.

25   Q    Right.  And my question to you in this document was,

46

1  there was a demand to be placed into escrow for $250,000

2  and Milpitas had the right to assert an unsecured claim for

3  additional amounts, and then you responded.

4  A    Yes, and I disagreed.

5  Q    And the basis for your disagreement says:

6         "The deed of conveyance was recorded and there is

7          no further encumbrance.  He was never allowed to

8          have the deed of trust since it stated amounts in

9          excess of what he had actually loaned.  Judge

10         Morgan agreed.  That is why he was to submit a

11         Proof of Claim by December 2002; i.e., reserving

12         his rights if he did not get paid or if he

13         thought he was entitled to more.  He never filed

14         his Proof of Claim, so his time has run.  He has

15         no remedies to that money, and the statute of

16         limitations ran long ago on both written and oral

17         contracts."

18 So your first response is not that Dimas didn't agree to

19 pay him the $250,000, but that he had missed the claim

20 date.

21 A    No, I state that he wasn't entitled.  We didn't talk

22 about the 250,000.

23 Q    Well, you were responding to my e-mail to you where I

24 talk about the 250,000.

25 A    I guess I don't understand your question.  I mean,

1

2

3

4

5                    CERTIFICATE OF TRANSCRIBER

6

7          I certify that the foregoing is a correct

8  transcript from the digital sound recording of the

9  proceedings in the above-entitled matter.

10

11  DATED: September 17, 2007

12

13

14

15

16

17

18

19

20

21

22

23

24

25