Lawrence E. Smith (#083899)
18 Crow Canyon Court
Suite 205
San Ramon, California 94583
Telephone: (925) 820-4310
Facsimile: (925) 820-9727
Email: larry@lesmithlaw.com

Attorney for Appellee
Milpitas Countryside Estates Development, Inc

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | Case No.: 5:07-CV-4084 JF |
|     **DIMAS, LLC,** | |
|         **Debtor And Appellant** | **OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE ESTATES DEVELOPMENT, INC.** |
| **RE:** | |
|     Bankruptcy Case No. 02-51420MM | Date: May 30, 2008 |
|     Adversary No. 02-5453 | Time: 9:00 a.m. |
|     Appellant: Dimas LLC | Judge: Hon. Jeremy Fogel |

## I. INTRODUCTION

In discussing page limitations for briefing in the closing moments of the trial of this matter in the Bankruptcy Court, the Hon. Marilyn Morgan remarked "I've got to tell you that Abraham Lincoln is here on the wall as a message to all that brevity is valuable." (Recorders

Transcript, Vol. IV, 78:3-5)[1]  Confronted with the 47 page Appellant's Opening Brief, the first impulse of Appellee Milpitas Countryside Estates Development, Inc. ("Milpitas") was to ignore that reminder and respond in kind with a massive Opposition Brief.  Upon further consideration, however, Milpitas believes that this is truly a case where "less is more" and that an extensive opposition is neither necessary nor appropriate.

While Appellant's Opening Brief acknowledges that "The standard of review of the bankruptcy court's order permitting the filing of a late claim based upon excusable neglect is abuse of discretion" and  "The bankruptcy court's decision awarding [Milpitas] restitution is reviewed on appeal for clear error in the findings of fact based upon the entire record presented (Bankruptcy Rule 8013) …"  (Opening Brief, 2:10-16), the brief fails to come close to a showing of abuse of discretion or clear error.  Further the brief does not demonstrate that the bankruptcy court made any error of law.  The brief simply rehashes arguments that were decided against appellant in the bankruptcy court, along with making a few new arguments not advanced below, while failing to give this Court any compelling reason to reverse the very carefully expressed decisions of the bankruptcy court.

Appellant presents four grounds for its appeal, each of which will be considered separately in this brief.  Milpitas believes that this Court should quickly come to the conclusion that none of the proffered grounds provide a basis for reversing the bankruptcy court's decision.

**II. ARGUMENT**

**A.  The Bankruptcy Court Did Not Err In Permitting Milpitas To File A Late Claim Based On Excusable Neglect.**  The bankruptcy court's oral Opinion and Order granting Milpitas' motion to permit the late filing of a claim by Milpitas is set forth at pages 9 through 19 of the transcript at the hearing on the motion submitted at Tab 64 of the Appellant's Designation

---

[1] Further citations to the trial transcript will be denoted by "RT" and volume number, such as

of Record.[2] The bankruptcy court issued its Order after considering a 9-page opening brief by Milpitas; a 10-page opposition brief, 7-page declaration and 3-page declaration filed by Appellant; a 12-page reply brief and declaration filed by Milpitas; and oral argument consuming the first 9 pages of the transcript of the hearing. The court's decision noted that "This is a very fact intensive case. And so I'm going to go ahead and make an extensive record of the facts before the Court." (T64, 9:19-21).

This Court should keep in mind that as of the hearing held on July 7, 2006, Judge Morgan had presided over the bankruptcy case for over four years and was completely familiar with the proceedings in the case. Each of the arguments now presented in the Appellant's Brief were raised in the Appellant's opposition filed in the bankruptcy court and each was countered in Milpitas' moving and reply papers. (See T59 through T63) As is clear from the transcript, Judge Morgan considered each of the arguments presented in the Opening Brief regarding the appropriate balancing of the factors set forth in Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), but nevertheless found that Milpitas had demonstrated "excusable neglect" warranting granting Milpitas an extension of time to file a claim. The bankruptcy court noted that in the Ninth Circuit, the bankruptcy court is bound to "examine all of the circumstances involved rather than holding that any single circumstance in isolation compels a particular result regardless of the other factors," quoting Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 n. 2 (9th Cir.1997).

Appellant's argument is quite simply that the bankruptcy court's balancing of the Pioneer factors was incorrect and that the bankruptcy court should not have found excusable neglect. Appellant does not argue that the bankruptcy court applied an inappropriate legal

---

"RT, Vol. IV" for volume IV of the transcript.
[2] This brief will follow the convention of Appellant's Opening Brief by referring to the contents of the Designation Of Record by the tab numbers, i.e., "T64" refers to the document at Tab 64.

standard, and although the case highlighted by the Opening Brief, In re Zilog, Inc., 450 F. 3d 996, 1000 (9th Cir. 2006) -- mentioned for no obvious reason except perhaps perverse satisfaction in The Recorder's headline that "Ninth Circuit Blasts Bankruptcy Court" -- does demonstrate that a bankruptcy court can commit an abuse of discretion in applying the Pioneer factors, the fact is the Zilog court found that the abuse was in **not** permitting a late-filed claim.

Appellant's argument ignores the "highly deferential" standard this Court must apply in evaluating whether the bankruptcy court abused its discretion. Royal v. Kautzky, 375 F.3d 720, 724 -725 (8th Cir.2004). This Court must affirm the bankruptcy court's exercise of its discretion unless "[the Court is] left with the definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors. Marx v. Loral Corp., 87 F.3d 1049, 1054 (9th Cir.1996) (emphasis added). A court abuses its discretion when "it makes an error of law or a clearly erroneous assessment of the evidence." U.S. v. Weiland, 284 F.3d 878, 882 (8th Cir.2002). Debtor has provided this Court nothing upon which the Court could find Judge Morgan committed either error and this Court should therefore affirm the bankruptcy court's ruling allowing the filing of a claim by Milpitas.[3]

**B. The Bankruptcy Court Did Not Err In Awarding Milpitas Restitution Because Milpitas' Proof Of Claim Was Marked For "Money Loaned".** Appellant's Summary Of Argument suggests that the bankruptcy court erred in ordering restitution to Milpitas because Section 1 of the pre-printed Amended Proof Of Claim Form filed by Milpitas

---

[3] This Court should note that Milpitas motion for an extension of time to file a proof of claim alternatively requested the bankruptcy court to find that by virtue of proceedings in the bankruptcy court, Milpitas be deemed to have filed an "informal" proof of claim based on Ninth Circuit authorities including In re Hansen, 97 Fed. Appx. 214 (9th Cir. 2004); Matter of Pizza of Hawaii, Inc., 761 F. 2d 1374 (9th Cir. 1985). (See T58) The bankruptcy court held that, in view of its ruling granting an extension of time to file a proof of claim, the court need not reach the issue of informal proof of claim (T64, 19:3-4), but were this Court to reverse the bankruptcy court's extension of time, the matter should be remanded to the bankruptcy court for consideration of whether Milpitas should be deemed to have filed an "informal" claim.

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE ESTATES DEVELOPMENT, INC.**
**Case No.: 5:07-CV-4084 JF**

(T99), setting forth the "Basis for Claim", had checked "Money loaned". The Opening Brief does not dwell on that argument, simply concluding that "Dimas was prejudiced because it had no notice of the true nature of MCED's claim." (Opening Brief, 35:10-15) Appellant never made such an argument in the bankruptcy court, presents no authority in support of the argument and the argument verges on the frivolous. The test for even an informal proof of claim is that the document "state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable…." In re Holm, 931 F. 2d 620, 622 (9th Cir. 1991). The voluminous documents submitted with Milpitas' initial Proof Of Claim (T65) and incorporated into Milpitas' Amended Proof of Claim (T66) include the joint venture agreement dated June 22, 2001, and virtually all of the other documents introduced in support of Milpitas' claim at the trial of this matter. Appellant was put on notice of the nature and amount of the claim and that it arose from the joint venture agreement(s) that the bankruptcy court eventually found unenforceable as shown by the defenses raised in Appellant's Objection To Claim (T67,1:26 -- 2:28), Pre-Trial Brief (T68) and Amended Joint Pre-Trial Order (T70).

Appellant has demonstrated no prejudice from Milpitas' Proof of Claim's characterization of the amounts claimed as "loans" rather than joint venture payments, a characterization that Milpitas continued to urge the bankruptcy court to accept at trial (based upon the characterization of the amounts as loans by Appellant's principal Ms. Rakitin and by Appellant's special counsel in various negotiations, motions and stipulations filed in the bankruptcy court). Indeed, Appellant vigorously argued that the monies advanced by Milpitas were not "loans" but investments pursuant to a joint venture agreement and the bankruptcy court's Memorandum Decision accepted Appellant's position. (T75, 19:7--20:24)

**C. The Bankruptcy Court Did Not Err In Reaching The Conclusion That The Transaction Between The Parties May Be Characterized As A Joint Venture That Is Not Enforceable.** Although Milpitas advanced multiple theories in its post-trial brief in the bankruptcy court for recovery of moneys Milpitas had advanced to Appellant, Milpitas first argument (T72, 18:22 -- 19:15) was that the only enforceable joint venture agreement against Milpitas, if any, was the agreement (T86) dated June 22, 2001, executed by Tony Hu on behalf of Milpitas and purporting to bear the signature of Adrienne Rakitin.  Milpitas argued that paragraph 5 of that agreement entitled Milpitas to a priority return of all monies invested in the joint venture prior to any payment to Appellant.  Appellant agreed in its post-trial brief (T71) that there was an enforceable joint venture agreement between Milpitas and Appellant, but argued that Milpitas was not entitled to any return of its investment because the project contemplated by the joint venture agreement -- developing and selling improved lots and/or houses on an approved subdivision -- never was completed.

As an alternative ground for recovery, Milpitas' post-trial brief argued that there had been no enforceable joint venture agreement formed between Milpitas and Appellant because the parties never agreed to material terms of the agreement and/or that Milpitas had been fraudulently induced to enter the agreement by Appellant's undisputed failure to inform Milpitas that the joint venture project was on the verge of foreclosure and subject to extremely high interest loans.[4]

---

[4] Because of the bankruptcy court's finding that there was never a "meeting of the minds" sufficient to form an enforceable joint venture agreement, the bankruptcy court did not reach Milpitas' argument that the agreement was unenforceable because Milpitas had been fraudulently induced to enter it.  (T75, 25:11-12)  If this Court should reverse the bankruptcy court's finding that there was no enforceable agreement ever formed, the matter should be remanded to the bankruptcy court to determine whether Milpitas is entitled to relief based on the fact that Milpitas was fraudulently induced to enter the joint venture and advance funds to the joint venture.

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE  ESTATES DEVELOPMENT, INC.**
**Case No.: 5:07-CV-4084 JF**

The bankruptcy court ultimately agreed with Milpitas' alternative ground for relief, finding that there was no enforceable joint venture agreement ever formed between Milpitas and Appellant. (T75, 19:5 -- 27:26) After extensive citation to California authority regarding the prerequisites for contract formation, the Court opined:

> The objective facts demonstrate that the principals of the two contracting parties, Dimas and MCED, did not reach a meeting of the minds as to the material terms of the joint venture. Each of the parties believed that the operative agreement was a different one. The testimony reflects that the principal of Dimas, Rakitin, believed that the terms of the joint venture were those set forth in the June 20, 2001 joint venture agreement. The principal of MCED, Hu, believed the terms were delineated in the June 22, 2001 joint venture agreement. There are significant differences between the two agreements. Dimas contemplated that investors would contribute $1.35 million in working capital to the development of the property pursuant to the June 20 agreement, while MCED agreed to make a $1.2 million investment pursuant to the June 22 agreement. Rakitin intended that Dimas would make a $2.04 million equity contribution to the joint venture based on a property valuation of $4.75 million. Hu, on behalf of MCED, understood that Dimas' equity contribution would be $2.29 million based on a property valuation of $5 million. Rakitin anticipated a profit distribution formula under the June 20 agreement of 65% to the investors while Dimas received 35%. She also testified that she believed that the profit distribution would be made pro rata from the sale of the improved lots and only after the mortgages had been paid. Hu believed that, pursuant to the June 22 agreement, MCED would receive a priority distribution of its initial capital plus a 100% return on investment, Dimas would recover its initial capital, then profits would be shared equally thereafter. Rakitin believed that MCED was obligated to make the mortgage payments. Hu, on the other hand, expected that Dimas would retain the existing mortgages. Because the June 22 agreement was silent as to payment of the mortgages, Hu believed that MCED was not required to make the payments. He understood that all the advances from MCED would be used to pay or to reimburse project development costs.
>
> The evidence shows that the parties had agreed to different terms. There was no mutual consent between the parties with respect to the amount of capital to be invested, the equity contribution by the property owner, the valuation of the property, the profit distribution, the obligation to make the mortgage payments, and retention of the existing mortgages. These terms are material because they have a significant financial impact on the parties. Because there was no meeting of the minds with respect to numerous, material terms of the joint venture, no agreement was formed. The June 22, 2001 joint agreement is not enforceable.

T75, 23:3 -- 24:2.

In addition to finding that there had been no meeting of the minds sufficient to form an enforceable contract based on differences between the June 20 and June 22 agreements, the bankruptcy court found that Ms. Rakitin's signature on the June 22, 2001, agreement was forged by John Ho and that Ho had neither actual nor ostensible authority to execute the document on behalf of Appellant, making the agreement unenforceable against Appellant. The bankruptcy court also found that Ho's testimony that Ms. Rakitin subsequently ratified the June 22, 2001, joint venture agreement was not credible and not supported by the facts, providing a further basis for finding the June 22, 2001, joint venture agreement unenforceable. (T75:3-12)

Somewhat surprisingly, Appellant's Opening Brief vigorously attacks the finding of the bankruptcy court that the June 22, 2001, joint venture agreement was not enforceable against Appellant, arguing that Ho did have ostensible authority to bind Appellant to that agreement through the forged signature of Rakitin and that, in any case, Rakitin did ratify the Agreement. In doing so, however, Appellant ignores Appellant's earlier citation of the proper standard of review contained in Bankruptcy Rule 8013:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. <u>Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.</u>

(emphasis added)

Appellant has presented vastly insufficient evidence and argument to demonstrate clear error in the bankruptcy court's findings of fact (1) that the principals of the two contracting parties did not reach a meeting of the minds as to the material terms of the joint venture, (2) that Ho had no ostensible authority to bind Appellant to the June 22, 2001 agreement and (3) that Appellant never ratified that June 22, 2001 agreement. In stark contradiction to the Opening Brief's

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE ESTATES DEVELOPMENT, INC.**
Case No.: 5:07-CV-4084 JF

8

position that the June 22, 2006, joint venture agreement was an operative, enforceable agreement, <u>Ms. Rakitin never testified at trial or in any way implied that she considered the June 22, 2006, agreement enforceable</u>.

In fact, all of the evidence shows that, until post-trial briefing in the bankruptcy court, Appellant has consistently claimed that the June 20, 2006, agreement was the only enforceable agreement between Appellant and Milpitas. In her September 18, 2001, letter to John Ho (T102), Ms. Rakitin bases her complaints on "review of the Joint Venture Agreement, dated June 20, 2001". In "Addendum No. 1" signed by Ms. Rakitin on behalf of Appellant on September 11, 2001 (T124), the recital states "This is the First Addendum for the Joint Venture Agreement between DIMAS, LLC. and Milpitas Countryside Estates Development, Inc. dated on <u>June 20, 2001</u>. (emphasis added) In her December 22, 2001, letter to John Ho (T106), Ms. Rakitin states that she provided the Deed of Trust of which Milpitas was beneficiary "based on the terms of the JV agreement signed by Michael", referring to Michael Jeng who (apparently but not actually) executed the June 20, 2001, agreement, not the June 22, 2001, agreement that Tony Hu executed on behalf of Milpitas.

In her declaration dated August 30, 2002 (T128), Ms. Rakitin states:

> 12. I have reviewed the June 22, 2001, joint venture agreement and I am informed and believe that defendant HO falsified and forged my name to a joint venture agreement between Milpitas Countryside Estates Development, Inc., and DIMAS dated June 22, 2001. I was unaware of the forged signatures until September 2001, when I was informed by other parties to the agreement of DIMAS' obligations. …
>
> 13. On or about July 16, 2001, after the joint venture agreements I had sign [sic] had been executed, Defendant HO advised me to record the Deed of Trust because the funding had been provided and that Dimas had the subdivision improvement agreement bond. I later learned that the $1,200,000 had not been paid, <u>and no joint venture agreement was executed</u>.

T128, 3:21 -- 4:2 (emphasis added)

Even in her June 20, 2006, declaration in opposition to Milpitas' request for an extension of time to file its Proof of Claim (T60), Ms. Rakitin implicitly disavowed the enforceability of the June 22, 2006, joint venture agreement:

> 10.  More egregiously, MCED has also attached a "Joint Venture AGREEMENT" <u>allegedly</u> executed between Tony Vu [sic], on behalf of MCED and myself (on behalf of Dimas) dated June 22, 2001.  <u>My signature on this agreement is forged</u> and I believe even Tony Vu may not have signed this agreement.

T60, 2: 10-13.

In Appellant's September 3, 2002, motion to expunge the Deed of Trust of which Milpitas was beneficiary (T33), Appellant also denied the enforceability of the June 22, 2001, joint venture agreement, arguing:

> When Dimas contacted Milpitas regarding its failure to perform under the joint venture agreements, Dimas learned that Milpitas alleged that it had not signed or authorized any party to sign on its behalf the joint venture agreements. Dimas further learned that Milpitas had a separate joint venture agreement, which it believed had been executed by Dimas.  This agreement placed almost identical obligations upon Milpitas and Dimas.  When Dimas viewed the document claimed by Milpitas to be binding and in effect by Dimas, <u>Dimas denied that its principals' signature was on the document and denied any knowledge of the separate agreement.</u>

T33, 2:5-11 (emphasis added)

Appellant's motion continued to state that there was no valid document securing the Deed of Trust and suggested that Milpitas could not argue that any of the joint venture agreements was valid and in effect.

Ms. Rakitin's testified at the bankruptcy court trial that she never even met Tony Hu until late September or early October and had no idea that he was connected with Milpitas until mid-December 2001. (Trans. v. I, 100:9-16; 105:4-8) She testified at trial as follows:

> Q.  Did you believe that as of June 17th, 2002, that Milpitas Countryside Estates Development, Inc., had an enforceable joint venture agreement with Dimas?
>
> A.  I'm sorry, Mr. Smith.  Would you repeat that?

> Q. Sure. As of June 17th, 2002, did you believe that there was an outstanding enforceable agreement between Milpitas Countryside Estates Development, Inc. and Dimas LLC?
>
> A. June 17th, 2002? Yes, I do believe that.
>
> Q. And which agreement was that?
>
> A. That was the June 20th agreement that had been executed by Mr. Michael Jeng and Dimas.
>
> RT, Vol. I, 135:16 -- 136:1

Quite clearly, Appellant never "ratified" the June 22, 2001, agreement executed by Milpitas until in desperation to avoid the bankruptcy court's finding that there was no enforceable agreement between the parties, entitling Milpitas to restitution of amounts advanced to and on behalf of Appellant.

In any case, and most importantly, Milpitas submits the ultimate result reached by the bankruptcy court would not have been different had the bankruptcy court found that the June 22, 2001, agreement appeared enforceable on its face against Appellant based on Ho's ostensible authority to forge Rakitin's signature or Rakitin's subsequent ratification of the agreement. As shown by the positions taken in Appellant's Opening Brief, the bankruptcy court would have undoubtedly found that there had been no meeting of the minds as to the proper interpretation of the language setting forth the material terms of the June 22, 2001, agreement. Milpitas believed the June 22, 2001, agreement required Appellant to make the payments on the existing mortgages and that Milpitas' investment was absolutely entitled to a priority return before any money was paid to Appellant, regardless of whether the project was ultimately built out as contemplated. Mr. Hu testified that he would never have invested in the project but for assurances that his investment was secured and entitled to priority payment after satisfaction of the existing mortgages. Appellant, on the other hand, even now vehemently disputes Mr. Hu's understanding

of the June 22, 2001, agreement's terms, contending that Milpitas was required to make the payments on the existing mortgages and that unless the project were successfully completed to the point of selling improved lots, Milpitas would not be entitled to <u>any</u> return of its investment.[5] Plainly, as found by Judge Morgan, the parties never reached agreement as to these most material terms of their relationship and no enforceable agreement would have been formed even if Appellant had agreed to the ambiguous language of the June 22, 2001, agreement.

For these reasons, Appellant's arguments that the bankruptcy court should have "interpreted" the June 22, 2001, agreement or read the June 20, 2001, and June 22, 2001, agreements as one contract make no sense whatsoever:  The threshold for interpretation of a contract is a finding that an enforceable contract exists.  The bankruptcy court found as a matter of fact that there was no enforceable contract, there is no basis for this Court to find that finding clearly erroneous, and there is therefore no error in failing to "interpret" a non-existent agreement.

**D. The Bankruptcy Court Did Not Err In Awarding Restitution Of Benefits Received By Appellant.**  The bankruptcy court awarded restitution to Milpitas of funds advanced for the benefit of Appellant based upon <u>Peerless Glass Co. v. Pacific Crockery & Tinware Co.</u>, 121 Cal 641, 647 (1898) and the provisions of Sections 15 and 40 of the Restatement (First) of Restitution.  The bankruptcy court's opinion quoted in particular comment c to Section 40 of the Restatement, which provides:

> What the parties think to be an agreement may not be one, either because there is ambiguity in the language used and each is justified in his interpretation, or because the parties, justifiably or with equal fault, are mistaken as to the terms agreed upon.  Likewise, their agreement may be so indefinite as to promise or performance that it is not enforceable as a contract, so that restitution for what has been performed is required to prevent unjust enrichment.  As in other cases where

---

[5] Appellant has never offered any justification for its insistence that it has sole entitlement to the surplus funds in the bankruptcy estate, with no repayment of any portion of the funds advanced by Milpitas, but Appellant has also never deviated from that insistence.

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE  ESTATES DEVELOPMENT, INC.**
**Case No.: 5:07-CV-4084 JF**

there is lack of mutual consent or consideration, the one rendering the services is entitled to restitution if he does not get the expected exchange….

Appellant presents multiple arguments for the proposition that Milpitas is not entitled to restitution. First, Appellant argues that Milpitas' Proof of Claim did not seek restitution. As set forth above, Appellant presents no authority that checking the wrong box on a Proof of Claim form should bar the bankruptcy court from awarding such relief as the bankruptcy court finds equitable based on the facts established at trial.

Second, Appellant argues that Appellant should not be required to make restitution since Appellant was unaware of Milpitas' purported "mistake", i.e., that Milpitas "mistakenly" understood that Milpitas' investment was not to be used to pay the existing mortgages, and that Appellant "changed its position based on the 'mistake'". In the first place, if there was a mistake, it was the parties' mutual mistake that there was an enforceable joint venture agreement in place. Milpitas is the party that changed its position based on that mistake, by advancing over $400,000 to Appellant and its agent Ridgeview in reliance upon the belief that Milpitas advances were secured and protected by the joint venture agreement. On the other hand, Appellant did not substantially change its position based upon its belief that there was a binding joint venture with Milpitas. Appellant had executed the Deed Of Trust of which Milpitas was the beneficiary months before the June 22, 2001 agreement and provided it to Ho, who recorded it. There is no evidence that the Deed of Trust ever resulted in any prejudice to Appellant, which, as set forth above, immediately and continually claimed that the Deed of Trust was not valid after learning that Milpitas was relying upon the signature of Ms. Rakitin forged by Ho.

What the authority cited by Appellant actually says is "Thus, a party who does not know about another's mistake, and has no reason to suspect it, may not be required to give up the benefit if he also relied on it to his detriment." In fact, far from relying upon the joint venture

agreement to Appellant's detriment, Appellant acknowledges receiving over $260,000 within one month of recording the Deed of Trust, $238,684.20 of which was immediately necessary to prevent the imminent foreclosure of Appellant's property (T75, 9:20-24) and a total of $366,394.20, $50,000 of which Appellant admittedly received after becoming aware of the "mistake". Also, contrary to the Opening Brief's statement, Appellant never stopped looking for further investors. Ms. Rakitin testified that when Milpitas refused to provide further funds in September 2001 after learning of the high interest rates on the existing loans, Appellant continued to pursue other investors. (T65, 10:11-12; 12:8-11)

Perhaps more significantly, the cases cited by Appellant all stand for the proposition that a party may not be entitled to restitution if the parties are equally at fault in causing the mistake that renders the contact unenforceable. That is not the present case. Each of the many joint venture agreements was prepared by Ho, whom the Court has found had the actual and ostensible authority to act as agent for Appellant in negotiating the terms of a joint venture, and Rakitin reviewed and executed each of the agreements prior to the June 22, 2001, agreement. Nevertheless, Appellant never clearly set forth in any agreement its expectation that it would be the obligation of Milpitas to make payments on the existing mortgages, and Ms. Rakitin acknowledged that she consistently neglected to put the word "current" in the agreements' provisions that Milpitas was to "keep the existing mortgage from Investment Grade Loans." (T75, 6:22 -28) Appellant never clarified that the priority return of Milpitas investment would only occur if the project were built out and that Milpitas would receive nothing if the project were sold prior to development, as it ultimately was. Appellant's failure to prepare and adequate agreement and Appellant's agent Ho's forged signatures, not fault on the part of Milpitas, created the "mistake" that an enforceable joint venture had been formed and it is only equitable that
**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE ESTATES DEVELOPMENT, INC.**
Case No.: 5:07-CV-4084 JF

Appellant provide restitution to Milpitas of the funds Milpitas advanced in reliance upon the mistaken belief created entirely by Appellant.

Comment f to Section 15 of the Restatement applies most directly to the present case:

> Where agent has no power to bind. Frequently a person is mistaken as to the existence of a contract with another because he deals with a purported agent who has no power to bind the other. In such case, if what he pays comes to the hands of the purported principal the transferor can recover the sum so paid unless such principal ratifies. If the purported principal with knowledge of the facts receives or retains the money and, although repudiating the transaction, refuses to repay the amount, the transferor is entitled, at his election, to recover back what was thus improperly received or retained or to maintain an action upon the transaction as it was purported to be made (see Restatement of Agency, 98 and 99) A person giving money to a purported agent who has no power to bind his principal thereby, is not entitled to restitution from the principal unless the money comes to the principal's possession or control or is used for his benefit.

Appellant knew by September 2001 of the "mistake" that a joint venture agreement was in force, but has never offered to return the money advanced by Milpitas. As a consequence, Milpitas was entitled to enforce the agreement according to its understanding of the agreement or obtain restitution. The bankruptcy court has determined that restitution is the appropriate remedy and Appellant has presented no basis for this Court to reverse that determination.

Third, Appellant argues that Milpitas is barred from restitution because it received the "expected exchange" and never offered to restore the benefits received. In fact, all that Milpitas ever received from Appellant was a deed of trust that Appellant insisted was invalid and that Milpitas reconveyed to Appellant in September 2001 for no consideration, ultimately permitting Appellant to reach the settlement that has resulted in the funds held by Appellant's estate. Milpitas has not received the benefit of the expected priority return of its investment, did not obtain Appellant's performance of keeping mortgage payments current and of course never received the profit that it expected under the June 22, 2001 agreement. In short, Milpitas never

received the expected exchange and long ago restored the only arguable benefit Milpitas received.

Fourth, Appellant argues that Milpitas is not entitled to restitution of monies paid to Ridgeview Investment, Inc., amounting to $101,434. As acknowledged by Appellant's Opening Brief, the bankruptcy court found that Ridgeview, a company controlled by John Ho, had actual and ostensible authority to act as Dimas' agent in accepting advances from Milpitas and that Appellant should bear responsibility for the funds advanced by Milpitas to Ho. (T65, 33:4-10) As set forth in the bankruptcy court's decision, Appellant acquiesced in accepting funds from Ridge view and John Ho and obviously recognized that Ridgeview and Ho were accepting funds on behalf of Appellant. See paragraph 22 of the Pretrial Order, reproduced at T65, 31:18-28. Appellant disputes the factual finding of the bankruptcy court that Ho and Ridgeview had actual or ostensible authority to accept funds on behalf of Appellant, but Appellant's argument falls far short of demonstrating "clear error" on the part of the bankruptcy court and should be rejected.

Appellant also argues that Dimas did not receive a benefit from the funds paid by Milpitas to Ridgeview and so should not be required to provide restitution to Milpitas. Appellant's position might be valid provided that Ho and Ridgeview had not had actual or ostensible authority to accept money on behalf of Appellant. On the other hand, given the bankruptcy court's finding that Ho and Ridgeview did have such authority, Milpitas' advance of money to Ridgeview was tantamount to advancing the money directly to Appellant. Whether Ridgeview afterwards used the funds to confer a further benefit upon Appellant, used it to reimburse itself or other investors for expenses previously incurred to or on behalf of Appellant, or kept the funds for it own benefit pursuant to its understanding (and the bankruptcy court's finding) of Ridgeview's entitlement to compensation for project management fees is entirely

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE ESTATES DEVELOPMENT, INC.**
**Case No.: 5:07-CV-4084 JF**

16

irrelevant given the trial court's finding that Ho and Ridgeview had authority to receive the funds on behalf of Appellant. As between Appellant and Milpitas, Appellant should bear the burden of any misappropriation by its authorized agent, not Milpitas, and Milpitas should receive restitution for the funds advanced.

        Finally, Appellant argues that Milpitas is not entitled to receive restitution for the $50,000 that Milpitas provided for the benefit of Appellant in January and February 2002. As set forth in the Opening Brief, Robert Liu testified that he borrowed this money from Milpitas for the benefit of Appellant (Opening Brief, 46:8-17) and Ms. Rakitin testified she knew the money she received from Liu was being advanced by Milpitas. (RT, Vol.I, 109:18-21) Appellant presented no evidence to contradict Mr. Liu's testimony and conceded that $49,939 of the borrowed funds was paid to Appellant or to Investment Grade Loans on behalf of Appellant to forestall foreclosure. If Appellant authorized Liu to borrow the money from Milpitas, then Appellant must repay the funds as it would any loan. If Mr. Liu was not authorized to borrow the money from Milpitas, Appellant nevertheless accepted the benefit of the funds and has not restored them, entitling Milpitas to restitution of the funds under the principles set forth above in Comment f. to the Restatement. The January 9, 2002, agreement simply has nothing at all to do with Milpitas right to recover funds loaned to Appellant and used by Appellant to Appellant's benefit.

## IV. CONCLUSION

        Milpitas understands Appellant's dissatisfaction with the bankruptcy court's decision in this case, especially given the amount of money involved. Milpitas was disappointed by many of the bankruptcy court's rulings, too, although of course gratified by the ultimate result. What Milpitas does not understand it Appellant's insistence on pursuing this appeal based almost entirely on arguments that the bankruptcy court did not properly exercise its discretion in

OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE  ESTATES DEVELOPMENT, INC.
Case No.: 5:07-CV-4084 JF

balancing the factors required to evaluate whether Milpitas showed excusable neglect in not filing a claim earlier and arguments that the bankruptcy court did not properly evaluate the evidence in making the factual determinations that are the basis of the bankruptcy court's ultimate decision.  Given the extreme deference that this Court must give to the bankruptcy court's exercise of discretion and findings of fact, Appellant's Opening Brief's rehashing of evidence fully and carefully considered by Judge Morgan seems to be a waste of resources of the Appellant's estate, Milpitas and this Court.

Milpitas submits that Appellant has not provided this Court any basis to reverse the bankruptcy court's exercise of discretion in permitting Milpitas to file its claim nor any basis to reverse the bankruptcy court's findings of fact after a four day long trial conducted by an experienced and fair judge who had presided over all proceedings in this case for over five years at the time of trial.  Appellant has not shown the Court any error by the bankruptcy court in applying the applicable law to the facts that would justify a reversal of the bankruptcy court's disposition of the case, which could only result in a remand to consider the arguments that the trial court felt it unnecessary to reach regarding informal claim and fraudulent inducement. Milpitas respectfully submits that it is time and entirely appropriate to put this matter to rest by affirming the bankruptcy court's disposition in its totality.

          Respectfully submitted,

_____
Lawrence E. Smith
Attorney for Milpitas Countryside
Development, Inc.

**OPPOSITION BRIEF OF APPELLEE MILPITAS COUNTRYSIDE  ESTATES DEVELOPMENT, INC.**
**Case No.: 5:07-CV-4084 JF**