Steven C. Finley CSB# 074391
HENNEFER, FINLEY & WOOD, LLP
425 California Street, 19th Floor
San Francisco, CA 94104
Telephone: (415) 296-0111
Facsimile: (415) 296-7111
Email: SFinley@finleylaw.biz

Special Counsel for Debtor and Appellant DIMAS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br>DIMAS, LLC<br>Debtor and Appellant.<br>RE:<br>Bankruptcy Case: 02-51420-MM<br>Adversary No. 02-5453<br>Appellant: Dimas LLC | Case No.: 5:07-CV-4084 JF<br>**APPELLANT'S REPLY BRIEF**<br><br>Date: May 30, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel |

## I. INTRODUCTION AND SUMMARY

Appellee MCED complains about the length of appellant's Opening Brief, extolling the virtues of "less is more." MCED avoids any detailed discussion of the evidence at trial, the cases discussed in appellant's Opening Brief and fails to address some of appellant's arguments. MCED contents itself with accusing appellant of "rehashing arguments," stressing the level of appellant's burden of proof on appeal and praising the bankruptcy court's decision by quoting portions at length.

//

MCED must, however, also recognize that the facts of this case were sufficiently complex to warrant a four day trial, two Memoranda decisions totaling 45 pages in length (T75 and T74 at 9-19), and that the size of its claim ($467,000) is large enough to almost exhaust Dimas' remaining estate.

The net effect of the bankruptcy court's ruling is to provide a total refund to MCED of all monies which it invested in a development project, turning the investment of monies with risk into a risk free loan, and at the same time, finding that there was no loan. The bankruptcy court's decision indulges MCED with every possible advantage, allowing it to constantly switch theories of recovery, and at the same time finding that MCED has the burden of proof. As briefed on this appeal, the decision is both contrary to law and manifestly unjust.

In summary, Dimas replies to MCED's Opposition Brief as follows:

1. The abuse of discretion standard of review does not mean that the bankruptcy court's decision is unassailable; the bankruptcy court erred in allowing a claim to be filed 4 years late, based upon a mistake of law.

2. MCED has confused factual findings and conclusions of law – whether or not Mr. Ho had *ostensible authority* to enter into the joint venture agreement on Dimas' behalf or to receive monies payable to Ridgeview on Dimas' behalf, and the issue of ratification of the agreement are *legal conclusions* subject to *de novo* review, *not*, as appellee would have it, findings of fact.

3. MCED agrees that in its Proof of Claim it was required to put Dimas on notice of the *nature* of its claim, that is an election to seek restitution of monies paid under an unenforceable contract, concedes that it never did so, but argues that it should be excused for "checking the wrong box."

///

4. MCED has the burden of proof of its claim and has left that burden unsatisfied.

5. MCED argues that the award of restitution is proper under the principles of the Restatement (First) of Restitution, but refuses to acknowledge the proper application of those principles to the facts.

6. Even assuming the right to restitution, it is *inequitable* that Dimas be required to repay MCED monies for which Dimas received no benefit.

7. There is no proper basis on which MCED can speculate that if part or all of the decision is reversed on remand, that the result might be the same.

## II. THE BANKRUPTCY COURT'S FINDING OF EXCUSABLE NEGLECT AND ALLOWANCE OF LATE CLAIM IS NOT UNASSAILABLE

In its Opening Brief (at pp. 8-16), Dimas argues that MCED did not satisfy its burden of proof of excusable neglect, taking into account the factors listed in *Pioneer Investment Services Co. v. Brunswick Assoc.* 507 U.S. 380, 395 (1993) and that the bankruptcy court abused its discretion in allowing MCED to file a claim 4 years after the bar date. The Opening Brief, with reference to the record, accurately recites MCED's actions or inactions from the claims bar date of July 9, 2002 until the hearing on its motion for permission to file late claim held 4 years later on July 7, 2006, and then reviews the evidence or arguments presented by MCED as to each of the *Pioneer* factors.

MCED's response is simply to state that all of Dimas' arguments were considered below and that Dimas has not shown any clear error of judgment on the part of the bankruptcy court justifying reversal. MCED does not attempt to explain how it satisfied its burden of proof below. It simply stands on the decision. However, as MCED admits, the bankruptcy court's exercise of discretion in finding, or not finding, excusable neglect has in the past been reversed by the Ninth

Circuit and is not unassailable. See *Kyle v. Campbell Soup Co.* 28 F. 3d 928 (9th Cir. 1994) (district court's finding of excusable neglect was reversed as an abuse of discretion); *In Re Zilog, Inc.* 450 F. 3d 996 (9th Cir. 2006) (decision of bankruptcy court and district court finding no excusable neglect was reversed as abuse of discretion).

In this case, the question arises: *what exactly was the "neglect" which the bankruptcy found to be excusable*? For this, reference must be had to MCED's motion for permission to file a late claim (T58). MCED asserts that:

> "Milpitas [MCED] failed to file a proof of claim by July 9, 2002, relying instead on the security of the Milpitas Deed of Trust and then on a 'Stipulation for Removal of Milpitas Deed of Trust' entered into on July 11, 2002." (T58 at 3)

The Deed of Trust was reconveyed on September 3, 2002 (T75 at 15:15-16), so there could have been no further reliance on the Deed of Trust after that date. And as the bankruptcy court held, the Stipulation for Removal of Deed of Trust was of no effect since it was not noticed to creditors or approved by the court, and therefore violated Bankruptcy Rule 9019 (T75 at 29:1-6). MCED's reliance on the Stipulation was nothing more or less than a *mistake of law*, ignorance of the bankruptcy rules, which the Ninth Circuit has held does *not* constitute "excusable neglect." See *Pincay v. Andrews* 351 F. 3d 947, 950 (9th Cir. 2003), citing *Kyle v. Campbell Soup co., supra* 28 F. 3d 928, 931, and *Pioneer Investment Services Co. v. Brunswick Assoc., supra* 507 U.S. 380, 388.[1]

The bankruptcy court's finding of excusable neglect on the part of MCED in failing to file a claim for 4 years after the bar date is a very clear error of judgment, not only because MCED has failed to justify the *Pioneer* factors, but also because MCED's mistake, reliance upon an

---

[1] This argument is also set forth in appellant's Opening Brief at 14:15-15:13, with no response from MCED.

Hennefer, Finley & Wood, LLP
*ATTORNEYS AT LAW*

ineffective stipulation, was a mistake of law made in ignorance of the bankruptcy rules which may not constitute excusable neglect. No authority has been provided, nor can it be, for the filing of a claim 4 years after the claims bar date based upon a mistake of law.[2]

### III. MCED'S PROOF OF CLAIM DID NOT GIVE DIMAS NOTICE OF THE NATURE OF MCED'S CLAIM

Dimas and MCED are in agreement that a creditor's Proof of Claim must provide the debtor with "adequate notice of the…nature…of the claim" (Opening Brief at 35, Opposition Brief at 5:6-9, citing *In Re UniOil, Inc.* 962 F. 2d at 988, 992 (10th Cir. 1992) and *In Re Holm* 931 F. 2d 620, 622 (9th Cir. 1991)).

The reason for this requirement is that debtor must be given the ability to evaluate, and as the case may be, agree to or contest the claim. This is not a trivial matter of "checking the right box" on a preprinted form but of fundamental due process. The Proof of Claim and then Amended Proof of Claim which MCED filed was for "Money Loaned" (T65 and T66), and said nothing of a claim for restitution under an unenforceable contract. The Proof of Claim form, under the heading "Basis for Claim" has a box titled "Other," which MCED could have checked and inserted "restitution under unenforceable contract." MCED claims that Dimas was put on notice of the nature of its claim by the fact that MCED attached to its Proof (T65) the June 22, 2001 Joint Venture Agreement ("June 22 Agreement"), and an Addendum to the January 9, 2002 Joint Venture Agreement, copies of numerous checks and correspondence, and the Construction

---

[2] MCED argues that even if the bankruptcy court's decision as to excusable neglect is reversed, the Stipulation for Removal of Deed of Trust was an "informal claim" and this argument would need to be decided on remand. However, an informal proof of claim must also show "the nature" of the claim against the estate (*In Re Holm, supra* 931 F. 2d 620, 622 (9th Cir. 1991)), and must also be received by the debtor within the claims bar period. The Stipulation for Removal of the Deed of Trust does not reveal the nature of MCED's claim (for restitution) and was entered after the claims bar date.

Manager Agreement; but these documents do nothing to explain the nature of MCED's claim. Without any explanation, these documents only confuse the issue, and lead Dimas to believe that MCED is in fact seeking to enforce the agreements attached.

Dimas was prejudiced because it twice received a claim of a loan, which it opposed by asserting a joint venture agreement. Dimas did not receive a claim for restitution under an unenforceable joint venture agreement and was deprived of the ability to evaluate such a claim and to prepare to contest it. Whether or not this was intentional on MCED's part, it deprived Dimas of the adequate notice of the nature of the claim to which it was entitled.

### IV. MCED HAS NOT DISPUTED THAT JOHN HO HAD OSTENSIBLE AUTHORITY TO ENTER THE JUNE 22, 2001 JOINT VENTURE AGREEMENT ON DIMAS' BEHALF

In its Opening Brief, Dimas challenged the bankruptcy court's *legal conclusion* based upon uncontroverted facts that John Ho did not have ostensible authority to enter the June 22, 2001 Joint Venture Agreement on Dimas' behalf (Opening Brief at 16-19). In opposition, MCED argues only that appellant has not shown "clear error in the bankruptcy court's *findings of fact*…(2) that Ho had no ostensible authority to bind appellant to the June 22, 2001 Joint Venture Agreement…" (Opposition Brief at 8:22-26).

Whether or not an agency exists, by virtue of actual or ostensible authority, ***is a legal conclusion*** not a finding of fact. *Van't Rood v. County of Santa Clara* 113 Cal. App. 4th 549, 559 (agency is a legal conclusion) and 572 (an agent may have either actual or ostensible authority); see also *Associated Creditors Agency v. Davis* 13 Cal. 3d 374, 398 (1975)(a finding of ostensible agency is a legal conclusion). As such, the court's conclusion that John Ho did not have ostensible authority is reviewed, not for clear error, but *de novo* or afresh.

MCED does not contest that there is substantial evidence in the record to support a conclusion of ostensible authority – the Letter of Authority signed by Dimas (T80) placed Mr. Ho in a position of being able to represent to MCED that the Agreement which he had been expressly authorized to negotiate had been ***jointly*** approved by him and Dimas, *whether it was or not*. MCED relied upon Ho's representation that Mrs. Rakitin had signed the June 22 Agreement and invested monies in the project in reliance. Long after MCED was informed, in September 2001, that its investment was used in part for debt service, MCED still regarded the June 22 Agreement to be in force and being performed (RT Vol. II at 39:1-7).

As a result, Dimas is estopped from denying enforcement, and both parties are bound. MCED makes no argument to the contrary in its opposition brief.

## V. MCED DID NOT SATISFY ITS BURDEN OF PROOF THAT THE JUNE 22 AGREEMENT WAS NOT RATIFIED

If MCED's claim for money loaned is somehow permitted to be amended to a claim for restitution pursuant to an unenforceable contract, despite the contrary authority discussed above, the burden of proof for such a claim of restitution still rests upon MCED as claimant. See T75 at 18:25-27, citing *In Re Holm, supra* 931 F. 2d 620, 623.

In its Opening Brief, Dimas has presented evidence and argument to the effect that the June 22, 2001 Joint Venture Agreement ("June 22 Agreement") was, as testified by Mr. Ho, later ratified by Dimas and is for that reason also binding and enforceable by and against both parties (Opening Brief at 19-24).

The bankruptcy court concluded that the June 22 Agreement had been ratified by MCED but rejected Mr. Ho's testimony that the June 22 Agreement was ratified by Dimas without citing facts in support. (T75 at 25:23-24, 8:26-27, 25:8-9). In its Opposition Brief, MCED attempts to

provide "the facts" which the bankruptcy court concluded did not support Mr. Ho's testimony that Dimas had ratified the June 22 Agreement (Opposition Brief at 9-11). However, these "facts" establish only that Mrs. Rakitin of Dimas became aware of the June 22 Agreement in September 2001 - after she had signed Addendum No. 1(T124)) on September 11, 2001 and after her reference to the June 20 Agreement in her letter of September 18, 2001 (T102) - and that she has stated truthfully under oath in her declarations and at trial that her signature on the document was forged.

MCED concludes that Dimas cannot have ratified the June 22 Agreement because Mrs. Rakitin never testified or implied at trial that she considered the agreement enforceable (Opposition Brief at 9:2-3). *At the same time, MCED points out that after Dimas learned of the June 22 Agreement in September 2001 ("the mistake that a joint venture agreement was in force"), it never offered to return the money invested by MCED, and that, as a consequence, MCED was entitled to enforce the Agreement (Opposition Brief at 15:14-16)*. Retention of the benefits is consistent with ratification. There was in fact no evidence or testimony at trial that after learning of the June 22 Agreement Mrs. Rakitin of Dimas in any way disavowed the Agreement or refused to comply with its terms. On the contrary, all of the evidence was that Dimas acceded to its terms and performed its conditions (Opening Brief at pp. 21-22).

By its unsupported conclusion that Dimas had not ratified the June 22 Agreement, the bankruptcy court permitted MCED to have it both ways – seek to enforce the June 22 Agreement, against Dimas or seek restitution of the monies which it had invested under the agreement if the agreement is unenforceable.

///

///

## VI. MCED IS NOT ENTITLED TO RESTITUTION UNDER AN ENFORCEABLE CONTRACT – THE COURT'S DUTY THEN IS TO INTERPRET THE CONTRACT

Dimas, in its Opening Brief, argues that the June 22 Agreement was binding and enforceable by and against *both* parties by reason of ostensible authority or ratification, or alternatively that the two Joint Venture Agreements (June 20 and June 22, 2001) should have been read together as one contract (Opening Brief at 25-34).

MCED answers this by making the circular argument that even if the June 22 Agreement was enforceable against Dimas, it would have been unenforceable because there was ambiguity as to whether MCED's working capital contributions could be used to make payments on the existing mortgages, and as to the conditions under which MCED was entitled to a return on its investment (Opposition Brief at 11-12). Here MCED misses the point. If the bankruptcy court had concluded, as it should have, that the parties had agreed upon the terms of their joint venture as set forth in the June 22 Agreement, the fact that they had different understandings as to the proper interpretation of certain terms of that agreement does not affect the validity of the contract or show that there was no meeting of the minds. *Warehouseman's Union Local No. 206 v. Continental Can Co.* 821 F. 2d 1348, 1350-1351 (9th cir. 1987).

> "Under the objective test of contract formation, a 'meeting of the minds' is unnecessary. A party is bound even if he misunderstood the terms of the contract and actually had a different, undisclosed intention." [citations omitted.]
>
> *Blumenfeld v. R.H. Macy Co.* 92 Cal. App. 3d 38, 46 (1979).

The fact that some of the contract language may have been ambiguous, and that the parties may have had different understandings as to certain terms, should not result in the court throwing out the window a joint venture agreement which was clearly the intention of both parties. The role of the court in these circumstances is to interpret the contract in accordance with the applicable

rules of contract interpretation and to give it a reasonable, fair and just meaning. *Harris v. Klur* 205 Cal. App. 2d 574, 577 (1962), Civil Code §§1635-1663. MCED's belief that is was entering into a loan transaction, even though the document stated "Joint Venture Agreement," and that it would be entitled to repayment of its investment no matter what, does not negate the existence of an agreement, objectively manifested by the parties in a document. See *Weddington Productions, Inc. v. Flick* 64 Cal. App. 4th 793, 811 (1998) (unexpressed intentions or understandings do not bear upon whether or not there is mutual consent).

The bankruptcy court stopped short of interpreting the Joint Venture Agreement by finding that there was no agreement, and MCED's speculation as to how the bankruptcy court might properly construe the Agreement upon remand is nothing more or less than speculation.

## VII. MCED IS NOT ENTITLED TO RESCIND THE JOINT VENTURE AGREEMENT FOR ALLEGED FRAUDULENT NONDISCLOSURE

In its Opposition Brief, MCED notes that the bankruptcy court did not reach MCED's alternative argument of fraudulent inducement because it concluded that there was "no enforceable joint venture agreement." (Opposition Brief at 6, footnote 4, citing T75 at 25:11-12). MCED argues that if this court were to reverse the bankruptcy court's finding as to no enforceable agreement, the matter should be remanded to determine MCED's entitlement to relief based on fraudulent inducement. However, *as a matter of law*, MCED is not entitled to rescind the Joint Venture Agreement for alleged fraudulent nondisclosure.

MCED's Proofs of Claim for "Money loaned" in no way suggest the nature of a claim for fraud (T65 and T66). Not until its Closing Briefs, submitted *after trial* (T72 and T73) did MCED *ever* assert fraud on the part of Dimas.

In the usual case of fraudulent inducement, where the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of fraud, is *voidable*.  In order to escape from its obligations, the aggrieved party must rescind by prompt notice and offer to restore the consideration received, if any." 1 Witkin Summary of California Law, 9th Edition Contracts s. 403 at p. 363.  MCED discovered the alleged fraud (that monies invested were being used to make mortgage payments) in September 2001 (T75 at 10:12-15).

However, MCED made no claim at that time (September 2001) <u>or at any other time up until the filing of its Post-Trial brief</u> that it had been fraudulently induced to enter into the agreement, gave no notice of rescission and did not offer to restore what it had received, namely a recorded fourth Deed of Trust for $1.2 million until long after it was sued by Dimas for expungement.

California Civil Code section 1691 provides that:

"Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:

a. Give notice of rescission to the party as to whom he rescinds; and

b. Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other do likewise, unless the latter is unable or positively refuses to do so."

Civil Code section 1693 provides in effect that delay in giving notice of rescission shall not prevent relief based upon rescission unless delay is substantially prejudicial to the other party. One who chooses to rescind a contract, which has been breached must do so promptly on discovery of breach, and may not wait to see whether the contract turns out to be profitable or

unprofitable. *Richter (B.C.) Contracting Co. v. Continental Cas. Co.* 230 Cal.App.2d 491, 499 (1964).

Mr. Hu of MCED also testified that he considered the joint venture agreement to be in force and being performed as at January 2002 (RT Vol. II at 39:1-7). Although MCED has known since September 2001 of the facts and circumstances which it now alleges to constitute fraudulent inducement, it never gave any notice of rescission, and in fact every action which it has taken has been *inconsistent* with rescission.

### VIII. MCED IS NOT ENTITLED TO RESTITUTION UNDER PRINCIPLES OF THE RESTATEMENT

Reasoning that no contract was formed, the court awarded MCED restitution of all monies paid based upon the principles stated in Restatement (First) of Restitution ("Restatement") §§15 and 40 and the comments thereto. Dimas points out in its Opening Brief that the facts, as found by the bankruptcy court, do not, for several reasons, justify restitution under the principles stated in the Restatement (Opening Brief at 36-40):

**1. MCED received the expected exchange and is not entitled to restitution under Restatement §15.**

The exchange which MCED expected after signing the June 22 Agreement was to receive a recorded $1.2 million Deed of Trust against Dimas' property, which it received (T75 at 5:26-28). Mr. Hu of MCED testified that he signed the Joint Venture Agreement only after he had actually seen the executed Deed of Trust."(T75 at 8:6-7). Under Restatement §15 and Comment c to Restatement §40, a party who pays money pursuant to the terms of a contract into which he has entered because of a mistake of fact, is only entitled to restitution *if he does not get the expected exchange*.

MCED admits, as it must, that it received a recorded Deed of Trust on July 16, 2001, after it had entered into the June 22 Agreement (Opposition Brief at 15:21-22, T75 at 5:26-28), but then proffers the argument that it did not receive the expected exchange because Dimas later filed suit to expunge the Deed of Trust once MCED stopped funding the project (T9 and T33),[3] and because MCED reconveyed the Deed of Trust more than a year later on September 3, 2002 (T75 at 15:15-16).[4]  MCED even goes so far as to argue that the "expected exchange" was not received because it did not receive expected profits from the joint development project (Opposition Brief at 15:27).  However, the question of why the joint development project was never completed and whether any profits would have been made lie at the heart of the issue of breach and damages, which should have been, but were never reached by the bankruptcy court.

### 2. Restitution does not lie where Dimas was unaware of MCED's "mistake."

In its Opening Brief, Dimas notes that the bankruptcy court found that Dimas was completely unaware of MCED's "mistake," that is Mr. Hu's apparent understanding that MCED's investment could not be used to keep the existing mortgages current (Opening Brief at 36-37).  A party who does not know about the other's mistake and has no reason to suspect it, may not be required to give up the benefit if he also relied on it to his detriment. *Ghirardo v. Antonioli* 14 Cal. 4th 39, 51 (1996), cited by the bankruptcy court in its Decision (T75 at 30:23).

///

///

---

[3] MCED promised to contribute working capital of $1.2 million, but invested a total of $467,829 (T75 at 31:12).

[4] MCED misstates the date of reconveyance as September 2001 in its Opposition Brief (at p. 15:23).

MCED does not discuss the *Ghirardo* decision, but argues that:

> "If there were some mistake, it was the parties' mutual mistake that there was a enforceable joint venture agreement in place" (Opposition Brief at 13:12-14).

MCED does not point to any evidence in the record or finding by the bankruptcy court to the effect that Dimas was ever aware of any *mistaken* belief on the part of MCED that it had entered into an enforceable joint venture agreement. Dimas acted in reliance on the belief that Dimas and MCED had entered into an enforceable joint venture agreement by recording the $1.2 million Deed of Trust in MCED's favor on July 16, 2001.

## IX. MCED IS NOT ENTITLED TO RESTITUTION OF MONIES PAID TO AND RETAINED BY RIDGEVIEW

The bankruptcy court reached the *legal conclusion* that Mr. Ho had actual and ostensible authority to accept payments from MCED (T75 at 33:4-6), but not actual or ostensible authority to enter into the June 22, 2001 Joint Venture Agreement on behalf of Dimas (T75 at 25:9-10). This is not, as MCED contends, a "factual finding," [5] but rather a legal conclusion based on factual findings as to which Dimas *has demonstrated "clear error"* in its Opening Brief (at pp. 40-42).

Specifically, the Construction Manager Agreement (T82) and Letter of Authority (T80) do not provide Mr. Ho, or his company Ridgeview, with actual authority to receive funds on Dimas' behalf, nor can the June 22 Agreement, since the court's restitution reasoning is that *there is no such agreement*, and if there were, the payments to Ridgeview/Ho would be made *by the joint*

---

[5] Opposition Brief at 16:13-14.

*venture, not by Dimas or MCED alone*.  In its Opposition Brief, MCED makes no response other than to state that Dimas has shown no clear error.

As to ostensible authority to receive payment from MCED *made out to Ridgeview*, MCED repeats the court's legal conclusion that this derives from the fact that Dimas received monies from Ridgeview which had been paid to Ridgeview by MCED (T75 at 33:6-7, Opposition Brief at 16:9-12).

However, MCED does not address the fact that Comment f to Restatement §15, and the illustrations 8 and 9 thereto, clearly state that Dimas is not responsible for restitution of monies *retained by its purported agent*, *who has no power to bind the principal to a contract*, unless the money was used for Dimas' benefit or the contract was ratified by Dimas.  (See Opening Brief at pp. 44-46).  The last two sentences of Comment f make it clear that unless either (1) Dimas has ratified the Joint Venture Agreement as to which Ho had "no power to bind" (the court concluded that Dimas had not ratified the agreement), or (2) the monies delivered to Ridgeview were used for the benefit of Dimas, *MCED is not entitled to restitution*.  As to whether the $101,434.80 retained by Ridgeview in any way benefited Dimas, MCED has not contested Dimas' showing that the court's finding that Ridgeview was somehow entitled to these monies was clearly in error. (See Opening Brief at 43-44, T75 at 33:16-19, Opposition Brief at 16:17-19: "Appellant's position [that Dimas did not receive a benefit from the funds paid by Milpitas to Ridgeview] might be valid…")

In short, under the Restatement, because the court has concluded that Ho had no authority to enter the Joint Venture Agreement for Dimas, and that Dimas never ratified the Agreement, MCED may not have restitution of monies it paid to Ridgeview/Ho pursuant to that agreement, *to the extent that Ridgeview retained the monies without any benefit to Dimas*, i.e. the sum of $101,434.80.

# X. MCED IS NOT ENTITLED TO RESTITUTION OF $50,000 WHICH IT KNEW THAT DIMAS RECEIVED PURSUANT TO THE JOINT VENTURE AGREEMENT OF JANUARY 9, 2002

In 2002, three payments totaling $49,939 were made by Robert Liu, the Secretary and a director of MCED, on Dimas' behalf to Investment Grade Loans, Inc. (T75 at 32:6-9). MCED had paid these monies to Robert Liu (T75 at 31:10-11).

Dimas understood that these monies were being paid pursuant to a January 9, 2002 Joint Venture Agreement (T75 at 25-27), which the court found to be unenforceable against MCED (T75 at 26). The bankruptcy court's Decision did not deal separately with these payments, but lumped them into its omnibus award of restitution.

In its Opening Brief, Dimas references the undisputed testimony of Mr. Liu, then the Secretary and a director of MCED, <u>that he knew that Dimas was receiving the monies, not as a loan, but pursuant to the January 9, 2002 Joint Venture Agreement</u>, that this knowledge of an officer and director is directly attributable to MCED, and that therefore there is no "mistake of fact" on the part of the payor (MCED or Liu), entitling MCED to restitution under the principles stated in Restatement §15 (Opening Brief at 46).

MCED's response in its Opposition Brief is that either Mr. Liu borrowed the money on Dimas' behalf and it is therefore repayable as a loan, or that if there was no loan, the monies must be returned under the principles of restitution stated in Comment f to Restatement §15. (Opposition Brief at 17). Neither analysis holds true because Liu was an officer and director of MCED, who witnessed the January 9, 2002 Joint Venture Agreement, knew that Dimas received the monies not as a loan, but pursuant to the terms of that Agreement, and his knowledge is directly attributable to and binds MCED. Accordingly, MCED (through Liu) was under no "mistake of fact," and to the extent that Liu acted as Dimas' agent in obtaining the monies from

MCED, by his own testimony, his authority was to receive monies under the terms of the Joint Venture Agreement and not as a loan. By virtue of Liu's knowledge of the Joint Venture Agreement, MCED was not acting under any "mistake of fact," and was not lending this money to Dimas.

## XI. CONCLUSION

The bankruptcy court's award of restitution of $467,829 to MCED should be reversed in full, or in part, with appropriate directions to the bankruptcy court upon remand.

Dated: May 27, 2008

Respectfully Submitted,

HENNEFER, FINLEY & WOOD

By    /s/ SCF
      Steven C. Finley
      Special Counsel for Debtor and Appellant
      DIMAS, LLC